*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★  ★  ★                                                    ★  ★  ★

**OPINION**

No. 04-08-00121-CR

Julio Cesar **JIMENEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 293rd Judicial District Court, Zavala County, Texas
Trial Court No. 97-06-02666-ZCR
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:   March 18, 2009

AFFIRMED

     Julio Cesar Jimenez was convicted by a jury of murder, and sentenced by the trial court to 47 years incarceration. Jimenez appeals his conviction complaining of: (1) charge error; (2) judicial vindictiveness; (3) erroneous admission of evidence; (4) prosecutorial misconduct; (5) improper jury argument; (6) improper rulings regarding two witnesses; and (7) cumulative error. We affirm the judgment of the trial court.

## BACKGROUND

Jimenez was convicted for the murder of Armando Aguillon. Jimenez and Aguillon knew each other and had previous problems before the day of the shooting. Jimenez testified that he was afraid of Aguillon because in the past, Aguillon had threatened Jimenez with a gun and would often follow him in his car. Jimenez eventually decided to move from Crystal City to San Antonio to avoid Aguillon's menacing presence.

The day before the incident, Jimenez returned to Crystal City to retrieve some of his belongings from his parents' house. Jimenez testified that one of the items was a shotgun; he put the gun in the backseat of his car, and several shotgun shells in the front seat.

The day of the incident, Jimenez was driving around Crystal City with his friend Dario Granado when they encountered Aguillon at a gas station. At the gas station, Aguillon made some hand motions which Jimenez interpreted as a challenge to come and get him. Jimenez drove off, and Aguillon chased him on the highway, ramming into the back of Jimenez's car more than once. At some point, positions switched and Jimenez began chasing Aguillon. When Aguillon drove into a residential area and pulled into an empty lot, Jimenez pulled in behind him. Jimenez testified that Granado had somehow accessed Jimenez's gun and loaded it; once the car stopped, Granado aimed the gun out the window and shot Aguillon. Aguillon died about a week later.

Jimenez testified that immediately after the incident, he and Granado drove to Jimenez's parents' house to get some money, and then drove back to San Antonio. Granado told Jimenez's father, his own brother, and his brother's friend that he shot somebody. A few days later, Jimenez returned to Crystal City and turned himself in.

In 2002, Granado was tried for Aguillon's death and convicted of manslaughter. Jimenez was tried a total of four times for his part in the crime. The trial that forms the basis of this appeal began on January 29, 2008. At that trial, Jimenez was found guilty by a jury, and the trial court assessed punishment of forty-seven years incarceration at the Texas Department of Criminal Justice–Institutional Division. This appeal followed.

## JURY CHARGE ERROR

In his first issue, Jimenez argues the jury charge in the guilt-innocence phase improperly applied the law of defense of a third party, allowing the jury to convict Jimenez on an inaccurate theory of law and resulting in egregious harm. Jimenez was tried and convicted as a party to the offense, and raised the affirmative defenses of self-defense and defense of a third party (on the part of Granado). The application paragraph of the jury charge included the following language:

> Now, if you find from the evidence beyond a reasonable doubt . . . [that] Dario Granado reasonably believed that the use of deadly force on his part was immediately necessary to protect himself or Julio Cesar Jimenez against the use or attempted use of unlawful deadly force by Armando Aguillon, and that Dario Granado then shot the said Armando Aguillon, and *that a reasonable person in the situation of Dario Granado at that time would not have retreated*, then you should acquit Julio Cesar Jimenez. . . .

(Emphasis added).

Jimenez argues that the charge improperly applied the law of defense of a third party, which allowed the jury to convict him if it found a reasonable person in Granado's shoes should have retreated. At the time of the offense, the law did not require the actor in defense of a third party to retreat. Under section 9.33 of the relevant Penal Code:

> A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, *the actor would be justified under Section 9.31 or 9.32 of this code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect . . . .*

TEX. PENAL CODE ANN. § 9.33 (Vernon 2006) (emphasis added). Section 9.32 of the Penal Code

stated:

A person is justified in using deadly force against another:

. . .

(2) *if a reasonable person in the actor's situation would not have retreated*; and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force . . . .

*Id.* at § 9.32 (emphasis added).

A plain reading of the two sections together appears to require a third party to retreat, if possible, before defending another. Prosecutors have argued that courts should adhere to the plain meaning of the statute and leave it to the Legislature to revise the statutory language in order to achieve its desired purpose. *See, e.g., Hughes v. State*, 719 S.W.2d 560, 563 (Tex. Crim. App. 1986). However, the Court of Criminal Appeals found the legislative intent was apparent in section 9.33 when it held the following:

Because under § 9.33(2) . . . an accused must reasonably believe that his intervention is "immediately necessary to protect the third person," it would be paradoxical, to say the least, to suggest that the Legislature intended that he first be required to retreat. Clearly what the legislature did intend was to justify use of deadly force to protect a third person in any situation in which the third person would apparently be justified in using deadly force to protect himself. By positing in § 9.33(1) that "the actor would be justified under Section . . . 9.32 of this code" in using deadly force to protect himself against that force "he reasonably believes

to be threatening the third person he seeks to protect," the Legislature was merely placing the accused, who is the "actor" under § 9.33, supra, in the shoes of the third person. So long as the accused reasonably believes that the third person would be justified in using deadly force to protect himself, the accused may step in and exercise deadly force on behalf of that person. Part of what goes into the assessment of whether the third person had a right to exercise deadly force in defense of himself is whether or not a reasonable person in his position would have retreated instead. Thus, in deciding intervention is necessary, the accused must reasonably believe that "a reasonable person in [the third person's] situation would not have retreated."

*Id.* at 564.

The *Hughes* decision is controlling authority for the proposition that it is error for a court's charge to impose on the actor a duty to retreat before resorting to deadly force in defense of a third person. Consequently, the jury charge submitted in the guilt-innocence phase of Jimenez's trial was in error. However, because Jimenez failed to object to the jury charge before the trial court, he must prove he suffered egregious harm as a result of the error in order to warrant reversal. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An error is egregious when it "deprives the accused of a 'fair and impartial trial.'" *Id.* at 173.

"In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). Jimenez argues the inclusion of his affirmative defenses of self-defense and defense of a third party, along with the error in instructing the jury to consider whether Granado should have retreated, led to an extremely confusing and misleading error charge, resulting in egregious error.

While the jury charge was erroneous, in assessing the remaining factors outlined in *Sanchez* we do not believe the error resulted in egregious harm to Jimenez. *See Sanchez*, 209 S.W.3d at 121 (factors to consider include the entirety of the jury charge, the evidence, arguments of counsel, and any other relevant information revealed by the record of the trial as a whole). Most notably, whether Granado should have retreated was not a key contested issue in the case; the main point of controversy was whether Jimenez, as the driver of the car, was a party to the offense of murder, with the intent to aid or assist Granado in the commission of the crime. Consequently, most of the evidence presented centered around this key issue. Key evidence was introduced to challenge Jimenez's argument that the shooting was in self-defense, including testimony that the final part of the car chase involved Jimenez and Granado following Aguillon, and that when Aguillon pulled into the empty lot, Jimenez and Granado pulled in behind him; shortly thereafter, Granado shot Aguillon. Jimenez also claimed that although he put the gun in the backseat and the shells in the front, he did not recall how or when Granado moved the gun from the backseat to the front seat, how or when he loaded it, or how and when Granado put the gun out the passenger window, aimed it at the victim, and shot him. This evidence, taken together with other testimony, was probative and supported the State's contention that Jimenez took part in planning and aiding in Aguillon's shooting. This evidence also rebutted Jimenez's claim of self-defense.

Based on the above, Jimenez's first issue is overruled.

### JUDICIAL VINDICTIVENESS CLAIM

In his second issue, Jimenez argues his right to due process of law was violated by judicial vindictiveness when the trial court arbitrarily assessed a greater punishment after the new trial without stating any reasons for doing so. In his third trial, Jimenez elected to have the jury assess

punishment; they sentenced him to forty years incarceration. On retrial by the same trial court, Jimenez elected to have the court sentence him and it assessed forty-seven years incarceration.

Jimenez bases his argument on the holding of *North Carolina v. Pearce*, 395 U.S. 711 (1969). The court in *Pearce* held that whenever a judge imposes a more severe sentence upon a defendant whose original conviction was set aside at his own behest, the judge's reasons for doing so must appear on the record. *Id.* at 726. The reasons for the increased sentence must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing; in addition, the factual data upon which the increased sentence is based must be made part of the record so that the increased sentence may be fully reviewed on appeal. *Id.* The court held this prevents vindictiveness on the part of the trial court, as due process requires that vindictiveness against a defendant for having successfully attacked his first conviction play no part in the sentence he receives after a new trial. *Id.* at 725.

In some instances, the appellant is entitled to a presumption of vindictiveness and therefore the rule in *Pearce* automatically applies. *See U.S. v. Goodwin*, 457 U.S. 368, 373 (1982). However, in a subsequent opinion the Supreme Court held the following:

> While the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." As we explained in *Texas v. McCullough*, "the evil the [*Pearce*] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge." Because the *Pearce* presumption "may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct," we have limited its application, like that of "other 'judicially created means of effectuating the rights secured by the [Constitution],'" to circumstances "where its 'objectives are thought most efficaciously served.'" Such circumstances are those in which there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such

reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.

*Alabama v. Smith*, 490 U.S. 794, 799-800 (1989) (internal citations omitted). Thus, a party is entitled to a presumption of vindictiveness (thus invoking the *Pearce* rule) unless the State can show, based on the record, that there is no reasonable likelihood of vindictiveness. *Id.* If the State shows no reasonable likelihood of vindictiveness, the presumption is rebutted and the *Pearce* rule does not apply; however, the defendant may still obtain relief through a showing of actual vindictiveness upon resentencing. *See id.*

The State argues there was no "reasonable likelihood" of vindictiveness on the part of the trial court when it sentenced Jimenez to an additional seven years' incarceration. The trial court granted Jimenez a retrial, discounting the notion that the judge, who could have denied the motion for new trial, showed vindictiveness towards him. *See Texas v. McCullough*, 475 U.S. 134, 139 (1986) (no vindictiveness where the trial judge granted a new trial). Jimenez argues this does not support the State's claim of no vindictiveness because the trial court did not articulate on the record its reasons for granting Jimenez a new trial, and therefore we cannot presume there was no vindictiveness. While the record does not include Jimenez's motion for a new trial and the basis for that motion, it does include the trial court's order which states, "After considering the pleadings, the evidence, and the arguments of counsel the court hereby finds that said motion is meritorious and should be granted." Consequently, whatever the reasoning, the judge found Jimenez's motion was substantiated and granted him a new trial, which is probative towards determining whether judicial vindictiveness existed upon sentencing.

In addition, Jimenez was entitled by law to elect punishment by a judge or jury, and of his own volition chose sentencing by the judge on retrial, having already been through one trial in the

same trial court. *See id.* (defendant's choice to have the same judge who previously presided over his trial sentence him on retrial showed the defendant's belief in the judge's fairness). Finally, Jimenez was sentenced first by the jury and then by the judge; different sentencers assess different punishments, and trial judges are afforded broad discretion in sentencing. *See Wasman v. United States*, 468 U.S. 559, 563-64 (1984).

Jimenez argues the *Pearce* presumption applies because there is a "reasonable likelihood" of vindictiveness on the part of the trial court, as the judge was aware of his previous sentence of forty years, and failed to articulate on the record its reasons for increasing his sentence. We find this argument unconvincing. While we believe a better practice for trial courts is to always articulate on the record its reasoning for a change in sentence, *Pearce*, applied in context with *Alabama* and other Supreme Court opinions, does not require such in all instances.

Because there was no "reasonable likelihood" of vindictiveness on the part of the trial court, Jimenez is not entitled to the *Pearce* presumption. Consequently, the trial court did not err when it neglected to state on the record its reason for the increased sentence. Jimenez's second issue is overruled.

### IMPROPER EVIDENCE

In his third issue, Jimenez makes several arguments regarding the improper admission of evidence during the punishment phase. Specifically, he contends the trial court erred by admitting evidence that Jimenez was previously tried three times for the same offense; by accepting evidence of a co-defendant's punishment; and by considering questions asked by the State as evidence.

Jimenez's first point concerns the presentencing investigation report (PSI). When the trial court asked if there were any objections to the PSI, Jimenez objected to a reference in the report

noting this was Jimenez's fourth trial for the offense. During argument, the State contended Jimenez's lies had much to do with the repeated trials, and argued that Jimenez did not deserve leniency in his sentence. Jimenez contends the State's argument was improper, arguing the rules of evidence prohibit the trial court from admitting evidence of previous trials for the same offense during the punishment phase.

Contrary to Jimenez's argument, courts have held that the rules of evidence generally do not apply to PSIs. *See Fryer v. State,* 68 S.W.3d 628, 631 (Tex. Crim. App. 2002) (noting "a PSI may contain—and a trial court may consider—evidence that could not have been introduced at the punishment stage of trial due to its subject matter, such as an arrest record or a pending indictment. . . . [G]enerally, the rules of evidence do not apply to the contents of a PSI . . . ."). The Texas Code of Criminal Procedure provides, "[B]efore the imposition of sentence by a judge in a felony case . . . the judge shall direct a supervision officer to report to the judge in writing on the circumstances of the offense with which the defendant is charged, . . . the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge." TEX. CRIM. PROC. CODE ANN. art. 42.12(9) (Vernon 2007). Information about Jimenez's previous trials fits into the general category of "any other information relating to the defendant or the offense . . . ." *See id.* Consequently, the trial court did not err in its admission of the PSI.

Jimenez next argues that the trial court erred by accepting evidence of his co-defendant's punishment. During closing argument of the punishment phase, the State pointed out that the judgment and sentence imposed on Granado, the shooter, was a great disappointment to the State. Jimenez contends that the State encouraged the trial court to consider Granado's light sentence when determining Jimenez's sentence. However, a review of the record reveals that the State appears to

have argued that while Granado was the shooter, Jimenez was the "brains" behind the killing and therefore should be sentenced accordingly.

Regardless of the State's argument, Jimenez notes that the outcome of a separately tried co-defendant's case for the same offense is inadmissible. *See, e.g., Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987). However, Jimenez has failed to show the trial court accepted the State's statement regarding Granado's sentence as evidence, and he failed object to the statement at trial. Jimenez has shown no error based on this point.

Finally, Jimenez argues the trial court erred in considering questions asked by the State as evidence. During punishment argument, the State asserted that Jimenez told Granado that he (Jimenez) was going to shoot Aguillon. Jimenez objected on the ground that the statement was not in evidence, and argued that questions asked during trial are not in evidence. The trial court responded by stating that it would "take that into consideration." Jimenez contends that this statement by the trial court indicates that it was taking the prosecutor's questions into consideration as evidence in the punishment phase. However, a review of the record indicates the trial court was merely stating it would take the State's argument and Jimenez's objections into consideration.

Even if Jimenez's contention that the trial court considered the State's questions as evidence were correct, it would constitute non-constitutional, harmless error. *See* TEX. R. APP. PROC. 44.2(b). Given that Jimenez had already been convicted of murder, and therefore found to have acted with the intent to promote or assist with the commission of the murder and to have aided in the commission of murder, the State's questioning regarding Jimenez's intention to kill Aguillon was not of such a magnitude that it would have substantially influenced the trial court's decision-making in sentencing Jimenez. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) ("A

criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect.").

Based on the above, Jimenez's third issue is overruled.

### DENIAL OF MISTRIAL AFTER WITNESS OUTBURST

In his fourth issue, Jimenez claims the trial court abused its discretion in failing to grant a mistrial due to a witness's outburst while testifying. Ms. Aguillon was called to testify for Jimenez; after defense counsel passed the witness and before the State began its cross-examination, the following exchange occurred:

| | |
|---|---|
| Ms. Aguillon: | May I say something? |
| Defense Counsel: | Sorry, ma'am? |
| Ms. Aguillon: | Well, I got to say it. Mr. Jimenez planned the murder. I'm sorry, but he did. |
| Trial Court: | The jury will disregard the statement of the mother of the victim who is obviously — |
| Defense Counsel: | Your Honor, at this time the defendant has to move for a mistrial. This is completely inappropriate for the witness, after I already passed the witness, to shout out her personal feelings. It is completely prejudicial to my client before this jury. |
| State: | That's improper to make in front of the jury. |

Following this exchange, the court held a bench conference, during which the trial court denied another motion by Jimenez for a mistrial. The court again instructed the jury to disregard the last comment made by Ms. Aguillon, noting there was "absolutely no evidence to support that comment" and that the jury was "to completely disregard it for all purposes."

We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Archie v. State,* 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Thus, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* (*quoting Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). In analyzing whether an event is so prejudicial that a mistrial must be declared, we apply the factors established in *Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998). *Mosley* requires us to consider: (1) the prejudicial effect; (2) the curative measures taken; and (3) the certainty of conviction absent the prejudicial event. *Id.* at 259.

"Conduct from bystanders which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985). While bystander conduct can be differentiated from witness conduct, the Court of Criminal Appeals has noted the following:

> [The difference between bystander outbursts and witness outbursts is] more of degree than kind. The added visibility of a witness over a mere bystander will increase the impact of an outburst on a jury. This factor suggests the need for added sensitivity to possible prejudice. It does not require that an entirely new standard be fashioned.

*Stahl v. State*, 749 S.W.2d 826, 829 n.2 (Tex. Crim. App. 1988).

Jimenez argues the outburst was particularly prejudicial because it came from the victim's mother, and that her visibility as a witness and her inflammatory statement were such that the motion to disregard could not cure the prejudice stemming from the event. However, Jimenez fails to show a reasonably probability that the witness's outburst interfered with the jury's verdict. The trial court gave two instructions to disregard: one immediately following the outburst, and one after the bench conference in which the trial court emphasized that the comments of the witness were not based on

any evidence whatsoever. In addition, the jury could have reasonably recognized this comment as the obviously biased opinion of the victim's mother. Consequently, the trial court did not abuse its discretion in denying Jimenez's motion for mistrial. His fourth issue is overruled.

## PROSECUTORIAL MISCONDUCT

In his fifth issue Jimenez alleges the prosecutor engaged in prosecutorial misconduct that deprived him of a fair trial. Jimenez cites two incidents to support his claim. The first occurred while Jimenez was questioning a senior investigator with the District Attorney's Office. The investigator testified about discussions between the DA's office and Jimenez, and the various deals offered but never completed. During the testimony, the lead prosecutor shook his head "no" and mouthed words. Jimenez objected, outside the presence of the jury, arguing that the prosecutor was trying to instruct his investigator how to answer; the prosecutor responded that he simply disagreed with the line of questioning. At Jimenez's request, the prosecutor was instructed by the trial court not to take those actions while witnesses were testifying.

The second incident in question occurred after Jimenez questioned the victim's mother, and she made the outburst referenced above. The cross-examination that followed consisted only of the prosecutor stating, "Mrs. Aguillon, I'm truly sorry for the loss of your son. No further questions." Jimenez requested the court strike the sidebar comments, which was granted. Jimenez argues the prosecutor's attempt to curry favor with the jury as someone who "truly" sympathized with her was clearly calculated to inflame the jurors' minds.

An appellate court reviews allegations of prosecutorial misconduct on a case-by-case basis. *Stahl*, 749 S.W.2d at 830. In order to preserve error for prosecutorial misconduct, the appellant must make a timely and specific objection, request an instruction to disregard any matter improperly

placed before the jury, and move for mistrial. *See* TEX. R. APP. PROC. 33.1; *Del Carmen Hernandez v. State*, 219 S.W.3d 6, 14 (Tex. App.—San Antonio 2006), *aff'd*, No. PD-1879-06, 2008 WL 4569865 (Tex. Crim. App. Oct. 15, 2008). However, "[w]here there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process . . . resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected." *See Rogers v. State*, 725 S.W.2d 350, 359-60 (Tex. App.—Houston [1st Dist.] 1987, no writ) (citations omitted). Finally, "[t]he question as to whether . . . the statements of counsel [necessitate] a reversal of the judgment is to be resolved on the basis of the probable effect on the minds of the jurors and the facts of each case must be looked to." *Hodge v. State*, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973) (*citing Hess v. State*, 328 S.W.2d 308 (Tex. Crim. App. 1973)*; Jett v. State*, 489 S.W.2d 101 (Tex. Crim. App. 1972)).

Though Jimenez claims ongoing prosecutorial misconduct, he references only these two incidents in support of his claim. Nothing in the record indicates these incidents were of such a magnitude that they resulted in "deprivation of fundamental fairness and due process of law," necessitating reversal. *See Rogers*, 725 S.W.2d at 360. The prosecutor's actions in shaking his head and mouthing words occurred on only one occasion; while his expression of sympathy to the victim's mother was improper, the court granted Jimenez's request to strike the sidebar comments. The likelihood of these incidents having an effect on the minds of the jury is minimal, especially in light of the trial court's responses. Jimenez's fifth issue is overruled.

## IMPROPER JURY ARGUMENT

In his sixth issue, Jimenez contends the State's jury argument during the guilt-innocence phase was so manifestly improper, harmful, and prejudicial that no instruction could have cured the

harm, resulting in a deprivation of due process and a fair trial. Jimenez has three complaints in this issue. First, Jimenez claims the State struck at the defendant over the shoulder of counsel when it stated, "Another thing that I strongly disagree with opposing counsel is that maybe it's wrong for Julio to commit perjury. It's not maybe wrong. It's always wrong. It's never right or maybe right to lie to a jury, to lie to twelve members sitting in judgment." Second, Jimenez claims the State attempted to bolster a witness's credibility via unsworn testimony when it encouraged the jury to believe in the truthfulness of witness statements which contradicted Jimenez's testimony, noting in particular the statements of the attorneys and investigators from the District Attorney's office. Finally, Jimenez claims the State injected new and harmful facts when he stated that Jimenez's co-defendant, Granado, was afraid to testify at Jimenez's trial because he feared Jimenez. Jimenez argues this statement is a reference to a threat allegedly made by Jimenez to Granado, and no evidence regarding the threat was ever presented to the jury.

Review of the record does not support Jimenez's allegations of error with regard to these three statements. Regardless, Jimenez failed to object during jury argument to any of the statements about which he complains, and therefore Jimenez must prove he suffered egregious harm as a result of the error in order to warrant reversal. *See* TEX. R. APP. P. 33.1; *Almanza*, 686 S.W.2d at 171. Jimenez fails to show how the alleged errors resulted in egregious harm. Review of the record shows the State's comment about perjury was aimed at Jimenez, not at his counsel, and that the alleged "bolstering" by the State was more of a summation of evidence and attack on Jimenez's credibility. Finally, the reference to Granado's fear of Jimenez was based on testimony before the jury and did not seek to enter anything new into evidence. Consequently, there is no showing of egregious harm, and the sixth issue is overruled.

## HOSTILE WITNESS

In his seventh issue, Jimenez contends the trial court abused its discretion in refusing to allow him to treat Police Chief Luis Contreras as a hostile or adverse witness. Jimenez subpoenaed Police Chief Contreras, including a subpoena duces tecum ordering Contreras to bring to court any police reports pertaining to Aguillon. Jimenez was seeking evidence to show he twice attempted to file complaints again Aguillon, but was ignored at the police station. When Jimenez asked Contreras if he brought the reports, the Chief answered that the DA's office had all the records relevant to the case, and that he thought the request related only to information pertaining to the case. Jimenez reiterated that the subpoena requested all reports filed by Jimenez about any and all incidents that occurred between him and Aguillon. The State then objected to Jimenez leading the witness and asserted that Jimenez could not treat his own witness as an adverse witness. The trial court sustained the objection and denied Jimenez's request to treat Contreras as an adverse witness.

Jimenez argues that when the trial court denied his request to treat Contreras as a hostile witness, it deprived Jimenez of the opportunity to put forth evidence through the police reports showing Jimenez had a reasonable fear of Aguillon. This error would constitute non-constitutional, harmless error. *See* TEX. R. APP. PROC. 44.2(b).

Jimenez did not establish what evidence he could have obtained had he been able to treat Contreras as an adverse witness. Contreras testified that while he found booking cards, he did not find previous police reports filed by Jimenez. While Contreras did not have the booking cards with him, Jimenez made no attempt to either request Contreras retrieve them or have the trial court order Contreras to do so. Jimenez failed to preserve this error because he never made an offer of proof to establish what evidence he intended to offer which was excluded by the trial court's ruling. *See*

*Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984); *Medina v. State*, 828 S.W.2d 268, 270 (Tex. App.—San Antonio 1992, no pet.); TEX. R. APP. P. 52(a)(b); TEX. R. CRIM. EVID. 103(a)(2). Jimenez's seventh issue is overruled.

### CUMULATIVE ERRORS CONSTITUTE REVERSIBLE ERROR

In his final issue, Jimenez argues the cumulative impact of the above errors was so great the reversal is required. Having found no error above, this issue is overruled.

### CONCLUSION

Jimenez has not shown egregious harm as a result of the trial court's erroneous jury charge. Additionally, the trial court did not err in increasing Jimenez's sentence without articulating its reasons for doing so on the record, nor did it admit improper evidence during the punishment phase or abuse its discretion in failing to grant a mistrial due to a witness's outburst while testifying. Further, alleged prosecutorial misconduct was not of such a magnitude that it resulted in an unfair trial, and we disagree with Jimenez's contention that the State engaged in improper jury argument during the guilt/innocence phase. Finally, the court did not abuse its discretion in not allowing Jimenez to treat the police chief as an adverse witness. We find no singular or cumulative error requiring reversal. Accordingly, we affirm the trial court's judgment.

Catherine Stone, Chief Justice

PUBLISH