*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*




**OPINION**

No. 04-11-00054-CR

Edward **BAUTISTA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-1339A
Honorable Raymond Angelini, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed: January 18, 2012

AFFIRMED

Edward Bautista appeals his conviction for aggravated assault with a deadly weapon. We overrule his issues on appeal and affirm the trial court's judgment.

## BACKGROUND

Bautista was indicted for aggravated assault with a deadly weapon based on a shooting arising out of a road rage incident. Specifically, after the complainant Jonathan Alvarez cut in front of Bautista's vehicle while exiting the highway, Bautista followed Alvarez into his

neighborhood and shot Alvarez when he approached Bautista's vehicle. Bautista then fled, but Alvarez caught up to Bautista and caused Bautista's vehicle to run off the road and crash into a fence. Alvarez required nine surgeries and was hospitalized for 27 days. At trial, Bautista testified that Alvarez "nicked" the front of his vehicle when he cut him off and Bautista followed him to get his insurance information; he shot Alvarez in self-defense when he ran toward Bautista's vehicle. Bautista also testified he had no prior criminal record and had applied for community supervision. A jury convicted Bautista of committing aggravated assault as charged in the indictment. Bautista was sentenced to twelve years' imprisonment, and assessed $90,000 in restitution payable to Alvarez for his medical expenses. Bautista now appeals.

**ANALYSIS**

On appeal, Bautista asserts that the judgment must be reversed based on prosecutorial misconduct and, alternatively, that the judgment must be reformed to conform to the jury's verdict.

### *Prosecutorial Misconduct*

Bautista asserts the cumulative effect of several instances of prosecutorial misconduct rendered his trial fundamentally unfair and requires reversal. Specifically, Bautista complains of the following conduct by the prosecutors during the guilt/innocence phase: (1) describing a MySpace photo of Bautista holding two guns that was not admitted into evidence; (2) asking Bautista about a nickname "Trigger-E" after Bautista denied it; (3) in closing argument, addressing two jurors by name, vouching for the truthfulness of the complainant Alvarez, making a comment that could be interpreted as mocking Bautista's claim of self-defense, and referring to the prosecutor's own personal experience trying assault cases; in addition, Bautista complains that during the punishment phase the prosecutors (4) questioned a character witness

about whether Bautista had committed "offenses in relation to drugs," (5) presented victim impact evidence through the testimony of Alvarez's mother, and (6) in closing argument, asked the jury to send the message that "we do not accept your tattooed lifestyle" by rejecting probation and sending Bautista to prison, and again referred to the Trigger-E nickname and Alvarez's mother's testimony. The State does not concede that any of the cited conduct by the prosecutors was improper; it asserts the challenged questions and arguments were simply advocacy.

The record shows that Bautista did not object on the basis of prosecutorial misconduct when any of these instances occurred. In order for a defendant to preserve a complaint about prosecutorial misconduct, he must make a timely and specific objection in the trial court, request an instruction to disregard the matter improperly placed before the jury, and move for a mistrial; otherwise, his complaint is forfeited. TEX. R. APP. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Hernandez v. State*, 219 S.W.3d 6, 14 (Tex. App.—San Antonio 2006), *aff'd*, 273 S.W.3d 685 (Tex. Crim. App. 2008). The necessity to raise an objection in the trial court applies regardless of whether an instruction to disregard could have cured the improper argument. *Cockrell*, 933 S.W.2d at 89; *Threadgill v. State*, 146 S.W.3d 654, 667, 670 (Tex. Crim. App. 2004) (reaffirming the *Cockrell* rule). "However, '[w]here there is serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process . . . resulting in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected.'" *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd) (quoting *Rogers v. State*, 725 S.W.2d 350, 359-60 (Tex. App.—Houston [1st Dist.] 1987, no pet.)); *see Berger v. United States*, 295 U.S. 78, 84, 88 (1935). Bautista raises just such an assertion of pervasive prosecutorial misconduct.

Bautista contends "the aggregation of these non-reversible prosecutorial errors" combined to deny him a fair trial. We must therefore determine whether the record shows that there was on-going prosecutorial misconduct of such a magnitude that it deprived Bautista of fundamental fairness and due process of law. *See Jimenez*, 298 S.W.3d at 214.

We resolve allegations of prosecutorial misconduct on a case by case basis, and determine whether the prosecutor's conduct requires reversal on the basis of the probable effect on the minds of the jurors. *Stahl v. State*, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988); *Hodge v. State*, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973); *Hernandez*, 219 S.W.3d at 13. To warrant reversal, the question or comment must be harmful to the defendant and "of such a character so as to suggest the impermissibility of withdrawing the impression produced." *Hernandez*, 219 S.W.3d at 14 (quoting *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988)(en banc)).

1. Improper Questions

We begin by considering Bautista's complaints about the prosecutors' questions and attempts to bring inadmissible evidence before the jury during both phases of trial. Bautista first complains of two questions asked during cross-examination of Bautista during the defense case in the guilt/innocence phase. Bautista testified in support of his self-defense claim, and stated that the gun he used to shoot Alvarez was the first gun he has ever owned. During cross-examination, the prosecutor described the contents of a MySpace photograph of Bautista that had not yet been admitted; specifically, after Bautista acknowledged recognizing himself in the picture, the prosecutor asked, "You're holding two guns, right?" The defense began to object, and the court quickly sustained the objection and reprimanded the prosecutor outside the jury's presence. When the jury returned, the court instructed them to disregard "all questions so far and

the statements by the prosecution concerning State's Exhibit Number . . . 45 . . . and not take it into consideration for any purposes whatsoever at this time." Bautista did not request a mistrial. Next, as part of the prosecutor's continued line of questioning about Bautista's experience with guns, he asked whether Bautista's friend Eddie "EJ" Norman calls him "Trigger-E." Bautista replied, "That's what they nicknamed me, yes." No objection was made. A short time later, after the MySpace photo was ruled inadmissible, the prosecutor asked Bautista again, "Finally, sir, your friends, EJ, et cetera, do you have any nicknames that they refer to you by?" This time Bautista answered, "No," and the prosecutor followed up by asking, "Has anybody ever called you Trigger-E?" Defense counsel raised a general objection; the court sustained it and instructed the jury to disregard the question.

At punishment, on cross-examination of one of Bautista's character witnesses, Brian McGill, the prosecutor asked if McGill was aware of Bautista having the nickname "Trigger-E;" defense counsel raised a general objection which was sustained, and the court instructed the jury to disregard the question. The prosecutor then referenced Bautista's tattoos, and asked McGill, "He does have the symbol for smoking marijuana?" to which Bautista raised a general objection; the court promptly sustained it and again instructed the jury to disregard the question. The prosecutor next asked McGill whether he knew if Bautista was "committing any offenses in relation to drugs?" The defense attorney began to object, and the court immediately sustained it and excused the jury. The court questioned the prosecutor about the basis for his question about Bautista committing drug-related offenses; the prosecutor replied the basis for the question was the fact that Bautista has many tattoos. The court admonished the prosecutor that tattoos do not show any type of drug use, and warned if he asked another question like that, the court would

declare a mistrial. When the jury returned, the court instructed them to disregard the last question and any answer. Defense counsel did not request a mistrial.

In addition, Bautista complains the prosecutor presented inadmissible victim impact evidence during punishment through Alvarez's mother who testified about the impact the shooting had on her son and the family; she also testified that a priest was called to give Alvarez his last rites two times during his hospitalization. Her entire testimony takes up only three pages of the transcript; further, the defense raised no objection to these areas of testimony. On appeal, Bautista asserts this victim impact testimony, particularly the reference to Alvarez receiving "last rites," was not admissible; however, he has not shown that the prosecutor introduced this evidence, knowing it was inadmissible, and has not shown how he was harmed by admission of the evidence. *See Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (general rule is that victim-impact testimony is admissible during punishment phase when it has some bearing on defendant's personal responsibility and moral culpability).

The State is traditionally afforded great leeway in making reasonable deductions from the evidence and in phrasing its questions to witnesses. *Hernandez*, 219 S.W.3d at 14 (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)). Merely asking an improper question generally will not constitute reversible error; it will usually be cured or rendered harmless through withdrawal of the question or an instruction to disregard from the court. *Rogers*, 725 S.W.2d at 359 (citing *Brown v. State*, 692 S.W.2d 497 (Tex. Crim. App. 1985)). Here, assuming without deciding that all the challenged questions were improper, the trial court promptly addressed the errors by giving the jury an instruction to disregard on each occasion. We must presume that the jury followed the court's instruction to disregard, and such an instruction is generally sufficient to cure error associated with an improper question, even one regarding an

extraneous offense. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). There is nothing in the record to suggest these questions by the prosecutor were clearly calculated to inflame the minds of the jurors, or were of such a character as to suggest the error could not be cured by the trial court's prompt instructions to disregard. *See Hernandez*, 219 S.W.3d at 14.

   2. Improper Argument

   We next consider Bautista's contention that several statements made by the prosecutors during their closing arguments at guilt/innocence and punishment were improper.

   It is well established that there are four general areas of proper jury argument: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answering an argument by opposing counsel; and (4) making a plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). A proper plea for law enforcement may be stated in several ways — as an argument about the impact of the jury's verdict on the community, or the relationship between the jury's verdict and deterrence of crime in general. *See Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). While a prosecuting attorney may draw "reasonable, fair and legitimate" inferences from the facts in evidence, he may not use closing argument to directly or indirectly bring matters before the jury which are outside the record and prejudicial to the defendant. *Id.* at 57; *Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio 2011, no pet.) (recognizing it is well-settled that a prosecutor may not refer to evidence outside the record during argument or engage in sidebar remarks). It is improper to invite the jury to speculate about the existence of evidence that was not admitted. *Wesbrook*, 29 S.W.3d at 115. An argument that falls outside the permissible scope will not constitute reversible error, however, unless, in the context of the record as a whole, it is "extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial

proceeding." *Id.* (also stating the prosecutor's comments must have been a willful and calculated effort to deprive the defendant of a fair trial). An instruction to disregard, which the jury is presumed to follow, will generally cure the improper argument. *Id.*; *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. . . ." *Wesbrook*, 29 S.W.3d at 116; *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994).

Here, Bautista complains that during closing argument at guilt/innocence the prosecutors (i) addressed two jurors by name, (ii) vouched for the truthfulness of the complainant Alvarez, (iii) referred to the prosecutor's own personal experience trying assault cases, and (iv) ridiculed Bautista's claim of self-defense. With respect to addressing the jurors by name, the prosecutor did so in the context of explaining that the foreperson must make sure the jury follows the court's charge, stating, "So whoever is the foreman or the forewoman — Ms. S- - - or Mr. M- - - — if it's you that's telling them what to do . . . ." No objection was made, and the single comment, even if improper, was not offensive or egregious. With respect to vouching for Alvarez's credibility, the prosecutor referred back to Alvarez's admission and explanation of his lengthy criminal history, which included domestic assault, stating, "Jonathan and Isabel, did they come here with clean hands? Maybe not. That's for you to decide. But I will tell you this, he [Jonathan] took that stand with open hands. He told you everything about his life." The prosecutor then compared Alvarez's candor to Bautista's trial admission that he did not initially tell the responding police officer the truth about his confrontation with Alvarez, omitting in particular that he had shot Alvarez. This comment fell within the permissible area of summarizing the trial evidence and making a reasonable deduction from the evidence concerning the two principal actors' credibility. During this same portion of the argument, the prosecutor

referenced his own experience trying assault cases, stating with respect to Alvarez's prior assault convictions, "Ladies and gentlemen, I've tried enough of those cases to know they're never as clean as [defense counsel] wants to bring them out. The greatest testimony is, [Jonathan and Isabel Alvarez] sit there together." No objection was raised. Even if improper, the sidebar comment was brief, did not inject new facts into the proceedings that were harmful to Bautista, and was not manifestly improper.

In addition, Bautista asserts the prosecutor mocked his defense and sought to inflame and prejudice the jury's minds against his claim of self-defense when, as he rose to give his closing argument, the prosecutor stated, "Ladies and gentlemen, as I rise to my full six-foot-three-inches of height, I hope I don't frighten any of you as I approach you. Okay?" The court interrupted and sua sponte admonished the prosecutor, warning, "If I hear anything like this again, I'm going to hold you in contempt. You got it?" The prosecutor apologized to the court, and continued his argument that, "the Defense in this case is a crock." Although Bautista did not object or request an instruction to disregard, the court's prompt reprimand conveyed the message to the jury that the prosecutor's comment was improper and should be disregarded. Moreover, while the prosecutor's point could have been properly conveyed to the jury in a different manner, the reference to Alvarez's large size was a reply to defense counsel's closing argument that when Bautista saw Alvarez, the "six-foot-four man, 300 pounds, in a dark street, on felony probation," coming toward him, he was justified in believing his life was in danger and in shooting Alvarez in self-defense; there were several unobjected-to references to Alvarez's height and physical size throughout the trial.

Finally, Bautista challenges the prosecutor's statement during closing argument at punishment in which he asked the jury to send the message that "we do not accept your tattooed

lifestyle" by rejecting Bautista's application for probation and sending him to prison; in addition, the prosecutor again referred to the "Trigger-E" nickname and to Alvarez's mother's testimony that her son received last rites in the hospital. In wrapping up his plea for the jury to send Bautista to prison, the prosecutor stated, "This is where you must say to the community, and to him, and to others like him - - and in Mr. McGill's words, this MTV culture - - 'This is real. This is not a game. We do not accept your tattooed lifestyle. We don't want it. Get it away from us.'" As defense counsel started to object, the court instructed the jury to disregard the last statement and admonished the prosecutor that "[a]nother word like that and it's going to be a mistrial." Although the sidebar comment was improper, when viewed in the context of the entire argument the prosecutor's comment was a plea for law enforcement and request for the jury to send a message to the community; there is nothing to suggest the court's instruction to disregard was incapable of curing any error caused by this comment.

Conclusion

Although the prosecutors may have stretched the limits of permissible advocacy in this case, we cannot say, considering the entire record, that their conduct rose to the level of reversible error—in large part because the trial court immediately addressed the borderline behavior from the beginning of the trial. The court promptly instructed the jury to disregard the errors as soon as they occurred and did not engage in, or permit, any banter about the conduct that would have drawn the jury's attention to the impermissible matter. Having considered each instance of prosecutorial misconduct alleged by Bautista, and the cumulative effect, we conclude the record does not show a course of conduct by the prosecutors that could only have been calculated to inflame and prejudice the minds of the jurors, and that prevented Bautista from receiving a fair trial. Accordingly, we overrule Bautista's claim of prosecutorial misconduct.

*Deadly Weapon Finding in Judgment*

In his other issue, Bautista argues the judgment must be reformed to delete the deadly weapon finding, and to correct the offense of conviction and the applicable Penal Code section, because the jury's general verdict does not support such a finding.  In a jury trial, an affirmative finding on use of a deadly weapon may be entered by the trial court when:  (1) the indictment specifically pleads use of a deadly weapon and the jury verdict states the defendant is guilty "as charged in the indictment;" (2) the weapon pled is per se a deadly weapon and the verdict states the defendant is guilty "as charged in the indictment;" or (3) the jury affirmatively answers a special issue on the use of a deadly weapon.  *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985) (a firearm is per se a deadly weapon); *see Lafleur v. State*, 106 S.W.3d 91, 92, 95 (Tex. Crim. App. 2003) (re-affirming and discussing *Polk*).

Here, the indictment charged Bautista with committing aggravated assault by two alternate manners and means.  Paragraph A of Count I of the indictment alleged that Bautista "did use or exhibit a deadly weapon, namely: a firearm, and Edward Bautista did intentionally, knowingly and recklessly cause bodily injury to Jonathan Allan Alvarez . . . by shooting the complainant with said deadly weapon."  *See* TEX. PENAL CODE ANN. § 22.02 (a)(2) (West 2011). Paragraph B of Count I alleged that Bautista "intentionally, knowingly and recklessly cause[d] serious bodily injury to . . . Jonathan Allan Alvarez . . . by shooting a projectile at and in the direction of the complainant."  *See* TEX. PENAL CODE ANN. § 22.02 (a)(1) (West 2011).  The two alternate manners and means of committing aggravated assault were submitted disjunctively in the jury charge, thereby authorizing the jury to convict Bautista of aggravated assault under either theory.  *See Gamboa v. State*, 296 S.W.3d 574, 582-83 (Tex. Crim. App. 2009) (alternate theories of committing the same offense may be submitted disjunctively in the jury charge

without violating the right to jury unanimity); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Bautista did not object to this portion of the jury charge, and did not request submission of a special issue on use of a deadly weapon. The jury returned a general verdict finding Bautista "guilty of aggravated assault as charged in the indictment." The trial court's judgment states that Bautista was convicted of aggravated assault with a deadly weapon under Count I, Paragraph A, of the indictment and section 22.02(a)(2) of the Penal Code; the judgment contains an affirmative deadly weapon finding.

Both of the alleged means of committing aggravated assault charged in the indictment involve the use of a deadly weapon. *Landrian v. State*, 268 S.W.3d 532, 538 (Tex. Crim. App. 2008). Paragraph A explicitly alleged Bautista used or exhibited a deadly weapon, i.e., a firearm, during commission of the assault, while Paragraph B alleged Bautista caused serious bodily injury to Alvarez; "causing serious bodily injury" necessarily implies the use of a deadly weapon. *Id.*; *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008); *see Vallado v. State*, 350 S.W.3d 257, 260 (Tex. App.—San Antonio 2011, pet. struck). Therefore, the indictment's allegation of both means of committing aggravated assault put Bautista on notice that use of a deadly weapon would be an issue at trial and that an affirmative finding on use of a deadly weapon would be inherent in the return of a guilty verdict. *Blount*, 257 S.W.3d at 714. Because use of a deadly weapon was pled in the indictment, and the jury found Bautista guilty of aggravated assault "as charged in the indictment," the judgment properly contains an affirmative finding that a deadly weapon was used during commission of the offense. *See Polk*, 693 S.W.2d at 394 (when use or exhibition of deadly weapon is pled in the indictment, a de facto affirmative finding on use of a deadly weapon is made when the jury finds the defendant guilty "as charged in the indictment"); *see also Garcia v. State*, 17 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.]

1999, pet. ref'd) (where jury found defendant "guilty of aggravated assault as charged in the indictment," and indictment alleged use of a deadly weapon during commission of assault, it was not necessary for jury to answer special issue on deadly weapon). Accordingly, we overrule Bautista's issue requesting reformation of the judgment.

### CONCLUSION

Based on the foregoing reasons, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

PUBLISH