

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00498-CR

LUIS MIGUEL HERNANDEZ                                             APPELLANT

V.

THE STATE OF TEXAS                                                APPELLEE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1331780D

----------

## CONCURRING OPINION

----------

Because Appellant Luis Miguel Hernandez's third issue is framed as an issue of prosecutorial misconduct—an issue that need not be strictly preserved in light of the resulting due process violation of Appellant's right to a fair trial—I concur with the Majority's disposition of this appeal. Appellant's third issue asserts that "[t]he trial court judge reversibly erred and abused its discretion in overruling the Appellant's objection to the prosecutor's inflammatory use of the

racial slur 'Niggas' which was outside the record of the case and had been urged intentionally and was manifestly designed to deny the Appellant a fair jury trial during the State's closing jury argument at the end of the guilt-innocence phase of the Appellant's trial."

At trial, Appellant claimed he did not commit murder but acted in self-defense. The jury was charged on self-defense. The State requested, and the trial court submitted, a jury charge on provocation.[1]

The evidence established that the deceased, who was an African American male, physically initiated the confrontation with Appellant by running at

---

[1]The trial court's instruction on provocation provided, in pertinent part:

> You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if the Defendant provoked the other's use or attempted use of unlawful force, unless the Defendant abandons the encounter, or clearly communicates to the other person his intent to do so reasonably believing he cannot safely abandon the encounter and the other person, nevertheless, continues or attempts to use unlawful force against the Defendant.

> So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the Defendant, immediately before the difficulty, if any, then and there did some act, or used some language or did both, with the intent on the Defendant's part to produce the occasion and to bring on the difficulty with [the deceased], and that such words or conduct on the Defendant's part, if there was such, were reasonably calculated to, and did, provoke a difficulty, and that on such occasion [the deceased] attacked the Defendant with deadly force, or reasonably appeared to the Defendant to so attack the Defendant, and that the Defendant then cut [the deceased] with a knife in pursuance of his original design, if you find there was such, then you will find the Defendant guilty.

Appellant. The State asserted that the deceased ran at Appellant because Appellant "used racial slurs and cuss words."[2] The sole witness to the altercation was the deceased's wife. She recounted that the deceased ran at Appellant because, when she asked Appellant to stop yelling at the deceased in the presence of her daughter, Appellant said, "F--- that b----, no one cares about her."

During the State's initial closing argument, the prosecutor explained to the jury:

> It is not in dispute that the Defendant killed [the deceased]. I mean, that's pretty much been admitted here in the courtroom.
>
> What you next have to consider is whether or not he gets to claim self-defense. And remember in jury selection when [another prosecutor] was talking to you-all about the term -- the legal term "provoking the difficulty." I can't go pick a fight with someone and then decide to claim self-defense after I do something bad.

No witness testified that Appellant uttered the word "niggas" to provoke the fight with the deceased; no witness testified that Appellant called the deceased "and his family" "niggas." The decedent's wife testified that the deceased ran at Appellant after Appellant said, regarding the deceased's young daughter, "F--- that b----, no one cares about her." Nonetheless, during final closing argument, the prosecutor told the jury, "What were the words of provocation? I'll tell you

---

[2]Fort Worth Police Detective Ernie Pate testified that Appellant had "admitted to [him] that when [Appellant] first spoke to [the deceased] that [Appellant] used racial slurs to [the deceased] and cuss words because of a prior altercation and prior confrontations they had had."

3

what the words of provocation were. [Appellant] called [the deceased] and his family 'niggas.' That's what it was."

Prosecutors are constitutionally prohibited from making racially or ethnically inflammatory remarks during closing argument. *See McCleskey v. Kemp*, 481 U.S. 279, 309 n.30, 107 S. Ct. 1756, 1770 n.30 (1987); *Bains v. Cambra*, 204 F.3d 964, 974 (9th Cir.), *cert. denied*, 531 U.S. 1037 (2000). Such comments "violat[e] a criminal defendant's due process and equal protection rights." *Bains*, 204 F.3d at 974. Because racial fairness is an indispensable ingredient of due process and racial equality a hallmark of justice, appeals to racial passion can distort the search for truth and drastically affect a juror's impartiality. *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990).

The United States Supreme Court has held that "prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987) (internal quotation omitted). To constitute a due process violation, the prosecutorial misconduct must be of such significance that it would result in the denial of a defendant's right to a fair trial. *Id*. at 765, 107 S. Ct. at 3109; *see Burwell v. Teets*, 245 F.2d 154, 163 (9th Cir.), *cert. denied*, 355 U.S. 896 (1957). An analysis of whether prosecutorial misconduct resulted in a due process violation of the defendant's right to a fair trial focuses on the effect of the misconduct—whether it infected the trial with unfairness—not on the prosecutor's motive, subjective intent, or culpability.

4

The United States Supreme Court has "clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing in [prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 1872 (1974)). Under Texas law, we are to resolve allegations of prosecutorial misconduct on a case by case basis and determine whether the prosecutor's conduct requires reversal on the basis of the probable effect on the minds of the jurors. *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.). To warrant reversal, the prosecutor's question or comment must be harmful to the defendant and of such a character so as to suggest the impermissibility of withdrawing the impression produced. *Id.*; *see also Berger v. United States*, 295 U.S. 78, 84, 55 S. Ct. 629, 631 (1935) (reversing judgment of conviction and granting new trial because of due process violation resulting from prosecutorial misconduct).

No witness testified that Appellant "called [the deceased] and his family 'niggas'" as stated by the prosecutor. The prosecutor's statement during final closing argument that Appellant called the deceased and the deceased's family "niggas" was outside the record and was a racially inflammatory remark. *See McCleskey*, 481 U.S. at 309 n.30, 107 S. Ct. at 1770 n.30; *Bains*, 204 F.3d at 974. Because the statement was made by the prosecutor during final closing argument, Appellant had no opportunity to respond to it or to correct it. The

5

prosecutor's statement directly impacted the sole issue in the case—whether Appellant acted in self-defense or, in fact, by words provoked the difficulty. The prosecutor told the jury: "What were the words of provocation? I'll tell you what the words of provocation were. [Appellant] called [the deceased] and his family 'niggas.' That's what it was."[3] The prosecutor thus not only attributed use of the word "niggas" to Appellant, but also stated that Appellant had used the word to refer to the decedent's family, which no witness testified to. And finally, the prosecutor expressly told the jury that these words supposedly uttered by Appellant—calling the deceased and his family "niggas"—constituted "words of provocation" that defeated Appellant's claim of self-defense.

In my view, the prosecutor's statement here directly undermined Appellant's sole defense by attributing the use of the racially inflammatory word "niggas" to Appellant and by telling the jury that Appellant referred to the deceased's family as "niggas," when neither of these facts are in the record or inferable from the record. To me, the prosecutor's statement during final closing

_____

[3]The State argues that the prosecutor's statement that Appellant provoked the fight by calling the deceased and his family "niggas" was a reasonable inference from Officer Pate's testimony that Appellant admitted he had used racial slurs when he first spoke to the deceased. I cannot agree. First, Officer Pate did not testify that "niggas" was the racial slur Appellant used. Unfortunately, many ethnophaulisms exist but most people consider this one exceptionally offensive and inflammatory. Appellant's concession that he used racial slurs does not support an inference that he used this particular one. Second, neither Officer Pate nor any other witness testified that Appellant directed racial slurs at the deceased's family, as opposed to at the deceased. The record supports no inference that Appellant directed racial slurs at the deceased's family.

6

argument—the very last words the jury heard before retiring to deliberate—was of such significance that it resulted in the denial of Appellant's right to a fair trial, and thus, deprived Appellant of due process. *See Greer*, 483 U.S. at 765, 107 S. Ct. at 3109; *Burwell*, 245 F.2d at 163; *see also Coleman v. Ohio Adult Parole Auth.*, 118 Fed. Appx. 949, 951–52 (6th Cir. 2004) (holding prosecutor's reference in closing argument to defendant's prior conviction constituted an introduction of evidence so extremely unfair as to violate fundamental conceptions of justice and thus a deprivation of defendant's right to due process); *see also Elizondo v. State*, 487 S.W.3d 185, 209 (Tex. Crim. App. 2016) ("It is relevant to the harm analysis that the provocation instruction undermined Elizondo's sole defense."). Accordingly, we must reverse and remand for a new trial.[4] *See Berger*, 295 U.S. at 89, 55 S. Ct. at 663 ("[S]uch misconduct was

---

[4]Although the general rule is that a timely and specific objection, a request for an instruction to disregard the matter improperly placed before the jury, and a request for a mistrial are required to preserve a complaint of prosecutorial misconduct, when "prosecutorial misconduct that undermines the reliability of the factfinding process . . . result[s] in deprivation of fundamental fairness and due process of law, the defendant is entitled to a new trial even though few objections have been perfected." *See Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (recognizing general rule); *Johnson v. State*, 432 S.W.3d 552, 561 (Tex. App.—Texarkana 2014, pet. ref'd) (same); *Jimenez v. State*, 298 S.W.3d 203, 214 (Tex. App.—San Antonio 2009, pet. ref'd) (recognizing exception); *see Rogers v. State*, 725 S.W.2d 350, 358 (Tex. App.—Houston [1st Dist.] 1987, no pet.) ("*[B]ecause fundamental fairness was vitiated*, the present case is an exception to the general rule that improper questions and arguments by a prosecutor cannot constitute reversible error unless the error is properly preserved.").

Because of the prosecutorial misconduct that occurred, and the resulting deprivation of Appellant's rights to due process and a fair trial, I would hold that

pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential. A new trial must be awarded."); *Bautista*, 363 S.W.3d at 263 ("To warrant reversal, the question or comment must be harmful to the defendant and of such a character so as to suggest the impermissibility of withdrawing the impression produced") (internal quotation omitted). Because the Majority reaches this disposition, albeit for different reasons, I respectfully concur.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED: November 3, 2016

---

Appellant's failure to request a mistrial does not constitute a waiver of his right to raise the issue of prosecutorial misconduct on appeal. *See Berger*, 295 U.S. at 89, 55 S. Ct. at 663; *Jimenez*, 298 S.W.3d at 214; *Rogers*, 725 S.W.2d at 358.