**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis L. HAMMACK,
Defendant-Appellant.**

No. 78–5400.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1979.

Juan P. Gonzalez, (Court appointed), Corpus Christi, Tex., for defendant-appellant.

Anna E. Stool, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge.

Appellant, Dennis L. Hammack, was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. (App.) § 1202(a)(1).[1] Prior to trial, appellant moved to suppress evidence, the gun, found in a "stop and frisk." This motion was carried with the merits and denied. Appellant appeals. For the reasons stated below we reverse.

On September 1, 1977, Officer Schultz, a member of the Corpus Christi Police Department, was informed by a confidential informant that appellant, Dennis Hammack, was a previously convicted felon who had served time for armed robbery at the Texas Department of Corrections, that Hammack was involved with prostitution out of a hotel on Leopard Street, that he often carried a gun and that when he did he wore his shirt outside his pants to conceal the weapon. This informant never before had given information to Officer Schultz. Officer Schultz verified, however, that Dennis Hammack had been convicted of armed robbery and had served time at the Texas facility.

On October 28, 1977, Officer Schultz communicated this information to a patrolman, Officer Hernandez, and warned Hernandez to exercise caution if he encountered Hammack. Schultz also informed Hernandez that appellant was often in the company of one Pearl, manager of Brown Liquor Store # 2, whom Hernandez identified as Pearl Murphy. Hernandez related the information to his partner.

That night, during routine patrol, Hernandez and his partner saw Pearl Murphy stop her car on Leopard Street alongside a pedestrian whom Hernandez recognized as a man with whom she had been seen recently, but whose identity neither officer knew. Pearl and the unknown man talked a few minutes before Pearl departed. Officer Hernandez concluded from the movements of the couple that they had been arguing.

Shortly after Pearl left, the officers decided to stop the appellant to ask for identification and to determine the nature of the argument. As Hernandez left the patrol car, he noticed that appellant's shirttail was out. Simultaneously with asking for identification, he "patted down" the subject and found a gun in the waistband of his pants.

---

1. 18 U.S.C. § 1202(a) provides in pertinent part:
   (a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,
   \* \* \* \* \* \*
   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Upon hearing that the subject's name was Dennis Hammack, Hernandez arrested appellant for possessing a firearm in violation of 18 U.S.C. (App.) § 1202(a)(1). On appeal, appellant urges that the judge erred in failing to exclude evidence seized in violation of appellant's Fourth Amendment rights.[2] Specifically, appellant contends that the gun must be suppressed as a result of an unreasonable search under the Fourth Amendment because there was no justification for the initial stop or search. The government contends, in contrast, that the stop was justified based on informant's tip and that the officer was entitled to "frisk" appellant in order to insure his safety.

The Fourth Amendment protection against unreasonable searches and seizures, under traditional analysis, prohibits a search or seizure without a warrant based upon probable cause except in a few narrowly defined circumstances. Even in situations in which the warrant requirement is suspended, the necessity for probable cause remains[3] unless the facts permit application of the doctrine adopted in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the court was confronted with the question of whether a "stop and frisk," not amounting to an arrest, passed Constitutional muster in the absence of probable cause. The Court held that because a "stop" is a less intrusive seizure than arrest or investigatory detention, a temporary detention is authorized if the police officer observes conduct by the subject that leads him to reasonably conclude that criminal activity is afoot. Specifically, an officer may lawfully stop a person "if specific and articulable facts which, taken together with a rational inference from those facts, reasonably warrants the intrusion." *Id.* at 21, 88 S.Ct. at 1880. The court further held that a "frisk" incident to the stop, a pat down of outer clothes for weapons, is permitted should the officer reasonably fear for the safety of himself or others in the vicinity. The *Terry* doctrine has been expanded to authorize a limited detention by a police officer based on a tip from an informer, rather than the first-hand observances of the officer involved. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).[4]

Although in *Terry* the Supreme Court sanctioned a "stop and frisk" on less than probable cause, it did not abandon a requirement for a justification, in terms of the valid interest of the state, for the intrusion. Therefore, a stop must be based upon a reasonable suspicion of criminal activity and the frisk must be supported by reasona-

2. Appellant also claims the following errors: (1) the identification of appellant as the subject apprehended was inadequate; (2) venue was improper; and (3) interstate transportation of the weapon was not established. Because of our disposition of the case, we do not address these issues.

3. For example, the requirement for a warrant has been suspended if (1) exigent circumstances exist such that a warrant cannot be sought without jeopardizing the continuing availability of the evidence, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); (2) a person with authority consents to the search, *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); (3) officers are in hot pursuit of a person suspected of crime, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); (4) the search is incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); and (5) the search occurs at a border or a functional equivalent of a border, *United States v. Reyna*, 572 F.2d 515 (5th Cir. 1978).

4. In *Adams*, a police officer was told by a person who was known to him that a person sitting in a nearby vehicle was in the possession of narcotics and was carrying a gun at his waist. The officer approached the vehicle and tapped on the window and asked the occupant to open the door. Instead, Williams opened the window and the officer immediately reached into the car and removed a gun from precisely where he had been told it would be. Williams was convicted of illegal possession of a handgun and narcotics. He appealed, claiming the "stop and frisk" was invalid absent more reliable information or corroboration of the informer's tip. Even though the reliability of the information would not pass muster under the tests promulgated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court held that the tip had sufficient reliability to justify a forcible stop. 407 U.S. at 147, 92 S.Ct. 1921.

ble fear for the safety of the officer or others. It follows from these standards that a "stop and frisk" for the purpose of merely identifying the subject would be an impermissible violation of the Fourth Amendment. *Brown v. Texas*, —— U.S. ——, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).[5] In *Brown*, the court declared "we have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity as is required in a traditional arrest. [Citations omitted.] However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity."

As we construe *Terry* and its progeny, the critical factor in evaluating the validity of a stop is the motivation of the officer involved. Crucial to this determination is the testimony of that officer as to the reasons for making the stop.

■ The trial court, in its findings of fact, determined that the stop was based upon the informant's tip and that the pat down occurred after the identity of appellant was disclosed. We conclude that these findings are clearly in error.

Officer Hernandez' testimony, in pertinent part, is as follows:

Q "You were looking for the subject to ID him?"

A "We weren't looking for him to ID him, but if we did run across him, I advised my partner we would like to get a complete ID on the subject, not for any particular reason, just to know who the subject was, because I didn't have any idea who he was and the information had been received by

Officer Schultz and I wanted to know what subject it was that was accompanying Pearl Murphy."

After testimony about the argument and Pearl driving off, Officer Hernandez further stated:

"Then she backed out and took off in a hurry and the subject continued walking. This time we decided to stop the subject and see what the argument was about and decided to ID the subject at the same time."

\* \* \* \* \* \*

Q "How was his shirttail at the time?"

A "It was pulled outside. As I stepped out of the vehicle, I noticed the shirttail was out and I asked him for identification and at the same time I patted him in the waistband, at which time I felt the pistol butt underneath his shirt in the front of his waistband, at which time I further investigated to see what it was and it was a .38 snub-nosed and advised the subject, who was identified as Dennis Hammack, that he was under arrest for carrying a pistol."

\* \* \* \* \* \*

Q "So you had seen Dennis Hammack before?"

A "I had seen him before, yes, sir."

Q "Did you know him to be Dennis Hammack or did you just know him to be an individual?"

A "Just an individual. I didn't know him by name, sir."

\* \* \* \* \* \*

Q "There was no suspicion or anything of that nature or anything wrong with Dennis Hammack being with Pearl Murphy, is that correct?"

---

5. The "stop" in *Brown* occurred under a slightly unusual factual situation. A Texas criminal statute provides that any person lawfully detained by a police officer must identify himself upon request by the officer. In *Brown*, the officers observed two men, one of them Brown, walking away from each other in an alley in a high drug traffic area. Although there was nothing suspicious about Brown being in that area and the officers did not suspect Brown of any criminal activity, they stopped him and asked him to identify himself. When he refused, they arrested him for violation of the statute requiring that a person identify himself to police officers. The Supreme Court reversed his conviction holding that the application of the statute to a situation where there were no objective facts indicating suspicious activity violated the Fourth Amendment.

A · "No, sir."

&ast; &ast; &ast; &ast; &ast; &ast;

Q "Your purpose for going over to this individual was because you wanted to ID him?"

A "The first purpose was to see what the argument was about, that we thought was an argument, myself and my partner, and we were—I didn't know the subject and just wanted to know who he was."

&ast; &ast; &ast; &ast; &ast; &ast;

Q "And so the fact that he had his shirttail out was not, in and of itself, a reason why you should search the Defendant, is that correct?"

A "That's correct."

Q "If you didn't know who he was."

A "No, sir, I didn't."

Q "And, therefore, information given to you by Sergeant Schultz could have been anybody?"

A "Yes, sir."

&ast; &ast; &ast; &ast; &ast; &ast;

Thus, the foremost ostensible purpose for the stop was to inquire about a possible argument. However, there is no support in the record that the argument was a disturbance or a suspicious prelude to any criminal activity. No shouting was heard, no violent gestures were made and the stop was not made until one of the participants had left the scene, precluding any need to prevent physical harm to the participants. Nor can the government rely on the other "purpose" for the stop, the desire to identify the appellant. This argument is completely foreclosed by *Brown, supra.* Although, as in *Adams*, the tip provides objective indicia of suspicion, it is clear that this did not trigger the search. If, based upon the tip, Officer Hernandez had *recognized* the subject as Dennis Hammack or, noticing his shirttail out, had *suspected* that the subject *might be* Dennis Hammack, both

the stop and pat down would have been justified as the nature of the criminal activity involved, possession of a pistol, would have warranted fear for safety. However, the testimony of the officers themselves negates this theory of motivation. Just as in the civil sphere we require more than negligence in the air, the suspicion in the air in the instant case cannot validate the stop. Therefore, the initial stop was unjustified under the *Terry* standard, and the gun, as fruit of this unreasonable "seizure" should have been suppressed. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

*REVERSED and REMANDED.*

AINSWORTH, Circuit Judge, dissenting:

I dissent from the majority opinion which reverses the conviction of defendant. I would affirm the District Judge (Owen D. Cox) who tried the case without a jury, heard and saw the witnesses, and in a written memorandum and order denied defendant's motion to suppress and found the defendant guilty.

The majority relies in part on selected excerpts from the arresting officers' testimony. However, the totality of the circumstances must be considered and when carefully examined disclose that there was reasonable suspicion and probable cause to stop the defendant and to frisk him for the weapon which was found on his person. The memorandum opinion of Judge Cox fully considers the issues, the testimony, and the circumstances which warranted defendant's arrest. The opinion is herewith reproduced.[1]

This case charging the Defendant with possession of a firearm by a convicted felon was tried before the Court on April 21, 1978. A motion to suppress that had been previously filed was carried along with the trial.

---

1. The recent Supreme Court case of *Brown v. Texas*, —— U.S. ——, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) bears slight resemblance to the facts of this case. The totality of circumstances in *Brown* shows a complete absence of articulable facts upon which to justify the stop and subsequent arrest of defendant for failure to identify himself in accordance with requirements of a Texas statute.

The Court finds that on October 24, 1977, Officer Andrew Schultz of the Corpus Christi Police Department was approached by a confidential informant, who told him that a person by the name of Dennis Hammack was promoting prostitution and also that he was a convicted felon who sometimes carried a firearm. The informant also stated that when Dennis Hammack had the gun he would not tuck in his shirttails so he could keep the gun under his shirt, tucked into his front pant's waistband.

Schultz had not previously received any information from the confidential informant. However, he verified the fact of Dennis Hammack's previous conviction from court records. Schultz relayed this information to Officer Dignacio Hernandez on October 24, 1977, at 9:45 p. m., and told him to be alert for his safety if he had occasion to encounter Dennis Hammack. Officer Hernandez and his partner started on patrol at 10:00 o'clock p. m. on said date.

At that time, neither officer was sure of the identity of Dennis Hammack. However, Hernandez did know Pearl Murphy, who was a constant companion of a man named "Dennis." At approximately 2:00 a. m. on October 25, 1977, Hernandez saw Pearl Murphy sitting alone in her parked car. About one hour later, the officers saw her stop her car on Leopard Street in Corpus Christi, Texas, near Defendant (whom the officers knew only as Dennis). Pearl Murphy and Dennis became involved in an argument with each other. The argument went on for a few minutes and then Murphy drove off hurriedly.

The officers then stopped the man known as Dennis to inquire about the altercation they had witnessed between him and Pearl Murphy. Hernandez noticed that Dennis' shirttails were out, and, being interested in identifying Dennis Hammack, made inquiry and learned the individual known as "Dennis" was in fact Dennis Hammack. Hernandez then patted Hammack around the waistband and felt a revolver, that is, a firearm, which was determined to be a Smith & Wesson, 38 caliber pistol. He then arrested Hammack on the instant charge.

It was stipulated between the government and the Defendant on trial that he had previously been convicted of a crime punishable by imprisonment for at least one year. It was also stipulated that the gun had traveled from Springfield, Massachusetts, to Corpus Christi, Texas.

The Court concludes that the rights of this Defendant were not violated by the actions of Officer Hernandez in the pat down that resulted in discovery of the firearm. The information given by the confidential informant justified the actions of Officer Hernandez in his attempt to ascertain the identity of "Dennis" and then, after identifying him as Dennis Hammack, he had probable cause to search his person, at such early morning hour, to ascertain if Dennis Hammack was carrying a firearm.

The Court recognizes that, if the confidential informant's warning is to be relied upon, the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), must be considered. This test requires the Court to examine both the credibility of the informant and the circumstances underlying the informant's belief. However, we point out that the test does not necessarily require that Officer Schultz had previously received information from said informant. The prior verification of innocent details of an untested informant's tip can support a finding of reliability. *U. S. v. Prueitt*, 540 F.2d 995, 1005 (9th Cir. 1976); *U. S. v. Edmond*, 548 F.2d 1256, 1258–59 (6th Cir. 1977).

But, even if the informant's tip might not meet the *Aguilar, supra*, test and thus was insufficiently corroborated, the police officers were entitled to use it in combination with other available factors to establish probable cause. The case of *United States v. McDaniel*, 550 F.2d 214, 217 (5th Cir. 1977), permits one officer's reasonable suspicion to support another officer's stop. Additionally, *United States v. Prince*, 548 F.2d 164, 165–66 (6th Cir. 1977), supports the use of information received from an informant with all other factors in establishing probable cause.

The Court concludes that, considering all the circumstances known by the officers at the time of the arrest of this Defendant Dennis Hammack, probable cause existed. This was the case immediately before verifying Defendant's last name as Hammack. To repeat briefly, it was an early morning hour when the officers saw Pearl Murphy in an automobile, apparently having an argument with a man who was known to the officers as "Dennis." Even though the officers did not know the last name of "Dennis" who accompanied Pearl, they did know his shirttail was out. When we measure the facts above discussed against the requirements of the law, we find that the officers were entitled to consider the situation a potentially dangerous one, and thus they were justified in making an investigatory stop of the Defendant and to inquire as to his name. Then, upon learning his full name was Dennis Hammack, and being aware that his shirttail was out, the officers, for their own protection, could pat down the Defendant. The initial information was then verified when the revolver was found on this Defendant.

The exigencies of the situation created an exception to the warrant requirement. The officers had the right to briefly inspect the Defendant and his surroundings for their own safety, especially when they suspected he had a gun. *Terry v. Ohio*, 392 U.S. 1, 22–23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), permits a brief detention by an officer who has a reasonable suspicion of criminal activity. Police may follow a *Terry* stop with a limited frisk for weapons if the officers have a reasonable belief that the suspect may be armed and dangerous. *Terry, supra*, at 30, 88 S.Ct. 1868. Also, see *Adams v. Williams*, 407 U.S. 143, 145–146, 92 S.Ct. 1921, 32 L.Ed.2d 612.

The Court concludes that because no Fourth Amendment violations occurred herein, the motion to suppress the firearm must be, and is hereby, denied. This being the case, all the evidence before the Court, including the testimony of the officers, the firearm, and the stipulation, establishes for this Court, beyond a reasonable doubt, that Dennis Hammack is guilty of being a convicted felon and possessing a firearm that has traveled in interstate commerce.