Samuel MOORE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–001–CR.

Court of Appeals of Texas, Austin.

Nov. 9, 1988.

Hugh S. Lowe, Supervising Atty., Austin, for appellant.

Ken Oden, Co. Atty., Austin, Alia Moses, Asst. Co. Atty., for appellee.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

JONES, Justice.

Appellant, Samuel Moore, Jr., was arrested and charged with the offense of unlawfully carrying a weapon. Tex.Pen.Code Ann. § 46.02 (1974). After a pretrial hearing, the trial court denied appellant's motion to suppress an illegal knife found in appellant's possession. Appellant pleaded no contest to the charge pursuant to a plea-bargain agreement, and was sentenced to 45 days in jail and a $500.00 fine, probated for 12 months, and 60 hours of community-service restitution. Appellant appeals from the trial court's denial of his motion to suppress. We will affirm the judgment of the trial court.

The evidence reveals that Officer Clark of the Austin Police Department, while patrolling in his police car, saw appellant and a woman arguing loudly on a street corner. He stopped his car and approached the pair in order to investigate the disturbance. As Officer Clark approached the couple, he noticed a knife handle sticking out of a sheath on appellant's hip. He took the knife from appellant and removed the knife from the sheath. Upon determining that the knife was in fact a dagger and therefore illegal, Officer Clark arrested appellant.

Appellant contends that the trial court erred in denying his motion to suppress the knife as evidence, arguing two bases of error: (1) the investigatory stop was constitutionally invalid, and (2) the removal of the knife from its sheath constituted, in and of itself, an unlawful search.

■ Regarding appellant's first ground, it is not disputed that a police officer may, in appropriate circumstances, detain an individual on less than probable cause for the purpose of investigating and preventing possible criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such a detention, however, no matter how brief, must be based on "specific, articulable facts, which in light of [the officer's] experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation." *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Cr.App. 1978). Courts have held that the detention must be "supported by reasonable suspicion," *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Cr.App.1986), and that the officer's suspicion may be based on "the totali-

ty of the circumstances." *Conner v. State*, 712 S.W.2d 259, 262 (Tex.App.1986, pet. ref'd).

Appellant argues that the articulable facts of the present case were not sufficient to warrant his detention. Accordingly, we will review the specific circumstances that Officer Clark encountered.

First, Officer Clark saw appellant arguing with an unidentified woman on a street corner at 3:00 p.m. Because of the way she was dressed and the particular neighborhood, he concluded that the woman was a prostitute. When he first noticed them, they were "yelling and screaming and waving at each other." When Officer Clark had stopped his car and was approaching them, appellant was still "somewhat yelling," "being loud," and "screaming at her." As he approached, Officer Clark saw that appellant had a sheath on his right hip, with a knife handle sticking out of it. Fearing that appellant might become violent, Officer Clark frisked him and took the knife, still in the sheath, while he questioned appellant.

■ Appellant cites *United States v. Hammack*, 604 F.2d 437 (5th Cir.1979), as being a factually similar case in which the Fifth Circuit Court of Appeals found a *Terry*-stop unjustified. *Hammack* is similar in that an argument between two persons first caught the officer's attention, but there the similarity ends. In the words of the court, "[n]o shouting was heard, no violent gestures were made and the stop was not made until one of the participants had left the scene...." 604 F.2d at 441. In the present case, however, shouting *was* heard, gestures *were* made, and both participants were still on the scene when the stop was made. In addition, in *Hammack* no weapon was discovered until after the detention had been made. Although in this case there is no evidence that Officer Clark had any reason to believe the knife was an illegal one while it was still in the sheath on appellant's hip, it is undisputed that Officer Clark saw the knife *before* he detained appellant. Therefore, the presence of the weapon was one of the facts available to the officer in deciding whether to make a "stop."

Based on the totality of the circumstances, we believe that a *Terry*-stop was justified in this instance. Part of a police officer's job is to prevent crime—particularly violent crime—from occurring. That necessarily includes the defusing of potentially explosive situations like the one here. We conclude that the articulable facts available to Officer Clark support an investigatory detention.

■ Having concluded that a brief detention was justified, we must also recognize that Officer Clark had the right, for his own safety, to disarm appellant while questioning him. Since he already *knew* that appellant was armed and that he was angry, we believe that the officer could reasonably have concluded that "his safety or that of others was in danger." *Terry v. Ohio, supra*, 392 U.S. at 27, 88 S.Ct. at 1883. Accordingly, we conclude that the detention of appellant and the concomitant seizure of his sheath and knife violated no Fourth Amendment protections.

Appellant next contends that when Officer Clark took the knife out of the sheath, he conducted an invalid search. Appellant argues vigorously that once Officer Clark had taken the sheath and knife away from appellant, he was no longer in fear for his personal safety and had no right to remove the knife from the sheath.

■ In *Terry*, the Supreme Court recognized the necessity for an officer to "neutralize the threat of physical harm" when confronting an individual who is or may be armed. *Terry v. Ohio, supra*, at 24, 88 S.Ct. at 1881. It is true that the temporary seizure of a weapon—or of a container that might contain a weapon—abates any threat *during* the confrontation. In the event the stop is to be concluded by release rather than arrest, however, logic dictates that the officer determine the extent to which any further danger may be presented to himself or others upon the return of the seized item. *See, e.g., State v. Ortiz*, 67 Haw. 181, 683 P.2d 822 (1984); *Jordan v. State*, 72 Md.App. 528, 531 A.2d 1028 (1987). *See generally,* 3 LaFave, *Search*

*and Seizure* § 9.4(d), at 525–26 (2d Ed. 1987).

In the present case, it is questionable whether the sheath can be characterized as a "container" at all. Even if it can, however, it is obviously a container that *definitely* held a knife which could be *quickly* produced. Officer Clark's determination of the extent of further danger would have been more difficult without at least a cursory examination of the knife.

The threat inherent in returning a knife to a detainee is problematical. However, balancing that unknown threat against the de minimis nature of the "search" involved here and the virtual absence of a reasonable expectation of privacy as to the contents of a knife sheath, we conclude that Officer Clark's interest in removing the knife from the sheath outweighed appellant's rights in preventing the intrusion.

For the reasons stated, the judgment of the trial court is affirmed.