

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-14-00144-CV |
| | § | |
| IN THE MATTER OF E.O.E., | | Appeal from |
| A JUVENILE. | § | |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | |
| | § | (TC # 1000902) |
| | § | |

**O P I N I O N**

The State charged E.O.E., with the offense of aggravated assault with the use of a deadly weapon pursuant to Section 53.045 of the Texas Family Code. A jury trial was held on February 11, 2014, in which a jury found him to have engaged in delinquent conduct. E.O.E. now appeals the jury's finding. He brings four issues for review, arguing that the trial court erred when it denied his: (1) self-defense instruction to the jury; (2) motion to suppress; (3) motion for mistrial due to alleged *Brady* violations; and (4) motion for a new trial based on alleged claims of prosecutorial misconduct. For the reasons that follow, we affirm.

**Factual Background**

*The Fight*

An altercation over alcohol arose between E.O.E. and Jorge Quinones at a house party on June 30, 2013. E.O.E. became argumentative and aggressive when Quinones denied him access

to the ice chest containing the alcohol. He confronted Quinones, stating that "he didn't give a f**k, he didn't care what anybody said and whoever got in his face, he was going to f**k everybody up." This verbal exchange escalated into a physical fight when E.O.E. punched Quinones first, but missed. The fight began at the main entrance of the home, moved to the parking lot, and eventually into the street. Quinones testified that he was protecting his family when the fight began. Quinones noticed at some point during the fight that E.O.E. pulled a knife and began swinging it at him. Quinones told E.O.E. to put the knife down so that they could fight "hand in hand, no knifes [sic]," but E.O.E. continued swinging the knife at Quinones. When the party moved into the street, E.O.E. and his friends threw rocks at Quinones. Quinones explained that he continued chasing E.O.E. and his friends away from the house in order to protect his family. Once the fight was over, Quinones noticed that he had been stabbed in his abdomen. Quinones gave his statement to the police on September 13, 2013, in which he referred to E.O.E. as the "fat kid, six, one, heavy, dark skin, about 17 years old, very short hair." He was unable to make a positive identification in any photo lineups.

*Appellant's Arrest*

Officer Jesus Munoz received a call around midnight regarding a fight in progress and arrived at the scene shortly thereafter. The radio dispatch indicated that some of the individuals fled the scene. Officer Munoz spoke with Quinones who indicated that he was involved in a physical altercation in which he was stabbed. Quinones gave Officer Munoz a description of his attacker. He described the person as a "Hispanic juvenile," of medium build, and provided Officer Munoz with a clothing description. Officer Munoz immediately dispatched this description over his radio to other officers in the surrounding area, but failed to later include the description in his written report. Officer Rodolfo Moreno received Officer Munoz's dispatch call concerning a fight involving weapons on the corner of Elm St. and Porter Ave. He was

-2-

already in the vicinity of where the fight occurred when he received the call. The dispatch call he initially heard did not indicate that there had been a stabbing. As he approached the intersection, Officer Moreno encountered E.O.E. along with two other juveniles walking eastbound on Porter Ave. The trio were located only three or four houses away from the house where the fight occurred, and were walking away from the scene. When the two juveniles accompanying E.O.E. noticed Officer Moreno, they fled southbound while E.O.E. continued walking eastbound. As Officer Moreno approached E.O.E. in his vehicle, he noticed that E.O.E. kept looking over his shoulder and reaching for his back pocket with his left hand. Officer Moreno testified that he was concerned that E.O.E. might be carrying a weapon given the nature of the dispatch call. E.O.E. initially refused to stop at Officer Moreno's request, but finally did so after the third request. Once he stopped, he voluntarily raised his hands in the air and walked toward Officer Moreno, sweating profusely. According to Officer Moreno, the profuse sweating indicated that he was either running or had just finished doing something physical. When Officer Moreno asked E.O.E. what he was doing and where he was coming from, the juvenile responded: "[We] were just walking by some party and there were--some guys were trying to jump [us], like beat [us] up and that's why [we] were running away from the property." Officer Moreno testified both at the suppression hearing and at trial that E.O.E.'s response, his vicinity to the fight, the time of night, and his consistent efforts to reach for his back pocket caused him to become suspicious of his activities. Accordingly, Officer Moreno conducted a pat down and found a knife in the juvenile's back left pocket. When Officer Moreno asked E.O.E. what was in his pocket, he responded, "I think it's a knife." Officer Moreno secured the knife onto his belt and continued questioning. While attempting to contact E.O.E.'s mother, Officer Moreno received an update over the radio indicating that there was a stabbing where the fight took place. Another officer who was at the fight scene -- Officer Argomedo -- contacted Officer Moreno on

-3-

the radio to ask him if he still had a subject detained, to which Officer Moreno responded in the affirmative. Officer Argomedo asked for a clothing description and Officer Moreno told him the suspect was wearing a "red top, black pants," and Officer Argomedo instructed Officer Moreno to "hold onto [the subject]." Officer Argomedo met Officer Moreno at the street location where Officer Moreno stopped E.O.E. to confirm that he was indeed the suspect they were looking for.

*Officer Moreno's 2008 Incident*

At the conclusion of Officer Moreno's trial testimony, E.O.E. inquired into his involvement in an on-duty shooting that occurred in 2008. The trial court conducted a bill of review outside the presence of the jury. Officer Moreno was working undercover at a 7-Eleven on East Yandell in El Paso, Texas, along with his partner. The two officers were patrolling the block when they heard gunshots coming from the store. Officer Moreno and his partner went immediately to the store. Inside, they encountered the suspect with a gun. Officer Moreno's partner instructed the suspect repeatedly to put his weapon down, but instead, the suspect pointed his gun toward Officer Moreno. Both Officer Moreno and his partner opened fire on the suspect. The Internal Affairs division of the El Paso Police Department (EPPD) conducted an investigation of the shooting pursuant to their protocol. No criminal charges were filed, and EPPD neither sanctioned nor brought any disciplinary actions against Officer Moreno. The deceased shooter's wife, however, brought a civil lawsuit against Officer Moreno. Officer Moreno initially testified during trial, prior to the bill of review, that he was found "not guilty" in that suit. He also referenced a jury trial, and indicated that his "charges were dropped." However, Officer Moreno's bill of review testimony indicated that the civil lawsuit was in fact dismissed with prejudice, and Officer Moreno never went before any kind of jury, civil or criminal, and no charges whatsoever were ever filed.

*DNA Expert Kathy Serrano's Testimony*

Kathy Serrano testified at trial as an expert witness in DNA testing and analysis. Serrano conducted a presumptive blood test on the knife retrieved from E.O.E. to determine whether blood existed on the knife. Her analysis detected blood on the knife and she documented her findings in her forensic biology laboratory report. On cross-examination, E.O.E. inquired into the absence of the knife photographs contained in Serrano's report. Serrano testified that while she took photographs of the knife in this case, she did not include them in her report. She went on to indicate that her typical process for most cases involved producing the report without the photographs. Serrano explained that she only provided the photographs upon request because they were part of her case notes and not part of her final findings or report. When the State attempted to show the photographs to Serrano, E.O.E. objected on the ground that the State's actions of withholding the photographs constituted a *Brady* violation. E.O.E. conducted voir dire to inquire further into the issue. At the time the court issued the discovery order addressing both the *Brady* material and the expert witness disclosures, the State had no knowledge that the photographs existed. It was not until a pretrial hearing, held ten days before trial, that the State came into possession of the knife photographs. E.O.E. then moved for mistrial and requested that the trial court strike Serrano's testimony. The State responded that the motion for mistrial should be denied because the photographs had not been admitted into evidence and the jury had not even seen them yet. The trial court ultimately sustained E.O.E. objection to the photographs, but denied the motion for mistrial. It then struck Serrano's entire testimony from the record and instructed the jury to disregard it.

## SELF-DEFENSE INSTRUCTION

In his first issue, E.O.E. contends the trial court erred by not including a self-defense instruction to the jury. "When reviewing a trial court's decision to deny a requested defensive

instruction, we view the evidence in the light most favorable to the defendant's requested submission." *Lee v. State*, 442 S.W.3d 569, 576-77 (Tex.App.--San Antonio 2014), *citing Bufkin v. State*, 207 S.W.3d 779, 782 (Tex.Crim.App. 2006). In analyzing a charge issue, our first determination is whether error exists in the charge. *Id.*, at 576-77, *citing Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). If we discover error, we must then determine whether that error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex.Crim.App. 2005). Under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App. 1988), a jury charge error requires reversal when the defendant properly objected to the charge and we find "some harm" to his rights. Because E.O.E. properly objected, we must determine whether "the error appearing from the record was calculated to injure" his rights, in other words, whether there was "some harm." TEX.CODE CRIM.PROC.ANN. art. 36.19 (West 2006). Finally, in evaluating harm, we consider the jury charge as a whole, the arguments of counsel, all of the evidence "including the contested issues and weight of the probative evidence," and any other relevant information revealed by the record as a whole. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Almanza*, 686 S.W.2d at 171.

The trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications when they are requested by the defendant and raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208-09 (Tex.Crim.App. 2007). A defendant is entitled to an instruction on self-defense as long as the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State,* 55 S.W.3d 586, 591 (Tex.Crim.App. 2001); *Booth v. State*, 679 S.W.2d 498, 500 (Tex.Crim.App. 1984); *Lugo v. State*, 667 S.W.2d 144, 146-47 (Tex.Crim.App. 1984). Here, "raised by the evidence" means "there is some evidence, from any

source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State,* 243 S.W.3d 647, 657-58 (Tex.Crim.App. 2007); *Lee*, 442 S.W.3d at 577. This rule ensures that it is the jury, and not the trial court, that decides the relative credibility of the evidence. *Lee*, 442 S.W.3d at 577. Testimony from any witness is sufficient to raise defensive issues. *VanBrackle v. State*, 179 S.W.3d 708, 712-13 (Tex.App.--Austin 2005, no pet.). And in determining whether the testimony actually raised a defensive theory, we view that evidence in the light most favorable to the defendant. *Id.* at 713.

The Texas Penal Code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX.PEN.CODE ANN. § 9.31(a)(West 2011). A "'[r]easonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* at § 1.07(a)(42). If the actor is responding to force that he initially provoked, then the use of force is not justified under the statute, unless the actor abandons the encounter but the other nevertheless continues or attempts to use unlawful force against the actor. *Tidmore v. State*, 976 S.W.2d 724, 728-29 (Tex.App.--Tyler 1998, pet. ref'd); § 9.31(b)(4)(A). The accused's intent may be inferred from words, acts, and conduct of the accused;[1] from the methods used and the wounds inflicted;[2] as well as from the circumstances surrounding the use of a weapon. *Cordova v. State*, 698 S.W.2d 107, 112 (Tex.Crim.App. 1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). "The Penal Code justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used." *Tidmore*, 976 S.W.2d at 728.

---

[1] *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App. 1982)

[2] *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981)

The amount of force used by the accused must also be proportionate to the amount of force encountered. *Id.* The Texas Penal Code adopted special rules to govern the use of deadly force in the context of self-defense. *Id.* Section 9.01(3) defines deadly force to mean force that is known or intended by the actor to cause death or serious bodily injury, or force that is capable of causing death or serious bodily injury in the manner of its use or intended use. § 9.01(3). A person is only entitled to use deadly force in self-defense against another: (1) if the actor would be justified in using [nondeadly] force against the other under Section 9.31 of the [Penal] code; and (2) when and to the degree [he] reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force; or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* at § 9.32(a)(1)(2)(A)(B).

More importantly, to rely on self-defense, a defendant must first admit to committing the conduct which forms the basis of the indictment. § 9.31; *Stoltz v. State*, No. 08-10-00048-CR, 2011 WL 3199337, at *4 (Tex.App.--El Paso, July 27, 2011, pet. ref'd); *East v. State*, 76 S.W.3d 736, 738 (Tex.App.--Waco 2002, no pet.); *Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App. 1999); *Kimbrough v. State*, 959 S.W.2d 634, 640 (Tex.App.--Houston [1st Dist.] 1995, pet. ref'd); *MacDonald v. State*, 761 S.W.2d 56, 60 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd). The Code defines conduct as "an act or omission and its accompanying mental state." TEX.PEN.CODE ANN. § 1.07(a)(10). Like other statutory defenses, a defendant's conduct is not negated under self-defense, but is excused from what would otherwise constitute criminal conduct. *Shaw*, 243 S.W.3d at 659; *see also Young*, 991 S.W.2d at 838 (explaining that "[i]n order to raise [a] necessity [defense], a defendant admits violating the statute under which he is charged and then offers necessity as a justification which weighs against imposing a criminal punishment for the act or acts which violated the statute."). Accordingly, an instruction to the

jury is inappropriate when the defensive evidence fails to essentially admit to "every element" of the offense. *Shaw*, 243 S.W.3d at 659.

E.O.E. contends the trial court erred in failing to include instructions on self-defense to the jury. He argues that "some evidence" was presented from the testimony of several witnesses, including E.D., J.D., and Jorge Quinones. He also argues that he retreated to the front of the home, and tried to run away, but Quinones continued to follow him. We disagree. The testimony does not support E.O.E.'s disproportionate use of deadly force in this instance. Rather, the record reflects that he: (1) provoked the initial argument; (2) took the "first swing" at Quinones; (3) threw rocks at Quinones while he was in the street; (4) and then threatened Quinones during their fist fight with a knife and continued to do so even after Quinones told him to put the knife away. More importantly, the trial centered on E.O.E. denying that he ever committed the offense with which he was charged. There is no evidence to support a finding that the juvenile admitted to actually committing the offense of aggravated assault with a deadly weapon, which would then entitle him to a self-defense instruction. Because he cannot receive a self-defense instruction without first admitting to the offense, the trial court did not err in denying the self-defense instruction. We overrule Issue One.

## DENIAL OF THE MOTION TO SUPPRESS

In his second issue, E.O.E. complains that the trial court erred in denying his motion to suppress. He contends that Officer Moreno stopped, detained, and ultimately arrested him based on a mere "hunch." We disagree.

When reviewing a trial court's decision to deny a motion to suppress, we "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We also afford the

same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions ultimately turns on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *quoting Guzman*, 955 S.W.2d at 89; *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000). Finally, where the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor, we conduct a *de novo* review. *Montanez*, 195 S.W.3d at 106, *quoting Guzman*, 955 S.W.2d at 89.

Generally, we consider only the evidence adduced at the suppression hearing because the trial court's ruling was based on it rather than evidence introduced later at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996); *Hardesty v. State*, 667 S.W.2d 130, 135 n.6 (Tex.Crim.App. 1984). However, this general rule is inapplicable where, as in this case, the parties subsequently re-litigated the suppression issue during the trial on the merits. *Hardesty*, 667 S.W.2d at 135 n.6. In such an instance, it is appropriate that we consider all evidence, from both the pre-trial hearing and the trial, in our review of the trial court's determination. *Rachal*, 917 S.W.2d at 809 ("Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review."); *see also Webb v. State*, 760 S.W.2d 263, 272 n.13 (Tex.Crim.App. 1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures by government officials. *See Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex.Crim.App. 2007); *Johnson v. State*, 912 S.W.2d 227, 232-234 (Tex.Crim.App. 1995); *Martinez v. State*, 72 S.W.3d 76, 81 (Tex.App.--Amarillo 2002, no pet.). Our decision here turns on whether Officer Moreno had a reasonable suspicion

that E.O.E. was engaged in wrongdoing when he encountered him on the sidewalk. In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even is the officer lacks probable cause. *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). The officer, of course, must still be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. The level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause. *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585.

Like probable cause, the concept of reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Reasonable suspicion is established if the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the police officer's intrusion into the suspect's constitutionally protected interests. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. We consider the totality of the circumstances when evaluating the validity of a *Terry* stop. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Moore v. State*, 760 S.W.2d 808, 809-10 (Tex.App.--Austin 1988, pet. ref'd). The "totality of the circumstances" analysis requires us to respect "the common-sense, reasonable judgments of law enforcement officers, as informed by all surrounding facts and circumstances and the rational inferences and deductions officers may draw from them based on their experience and familiarity and the areas they serve." *In re R.S.W.*, No. 03-04-00570-CV, 2006 WL 565928, at *3 (Tex.App.--Austin, Mar. 9, 2006, no pet.); *Ford v. State*, 158 S.W.3d 488, 494 (Tex.Crim.App. 2005)(law enforcement training or experience can factor into a reasonable suspicion analysis); *see also United States v. Cortez*, 449

U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

Here, Officer Moreno identified numerous objective facts that could have led him to reasonably conclude that E.O.E. had engaged in criminal activity. He stopped and detained E.O.E. due to the suspicious circumstances surrounding the encounter. Collectively, these circumstances included: (1) the juvenile's continuous behavior of reaching toward his back pocket; (2) the time of night (it was past the City's 11 p.m. curfew for juveniles); (3) the location where he encountered E.O.E. and its proximity to the location where the fight with weapons occurred; (4) E.O.E.'s juvenile companions who fled the scene as soon as he approached them in his vehicle; (5) and E.O.E.'s response that he had just come from the direction of the fight. *In re R.S.W.*, 2006 WL 565928 at *11; *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997); *State v. Bryant*, 161 S.W.3d 758, 762 (Tex.App.--Fort Worth 2005, no pet.)(time of night and area's crime rate supported a reasonable suspicion that defendant was, or would soon be, engaged in criminal activity); *Alexander v. State*, 879 S.W.2d 338, 342 (Tex.App.--Houston [14th Dist.] 1994, pet. ref'd)(being in a park hours past curfew and acting as if one were trying to hide something are facts sufficient to constitute reasonable suspicion).

Officer Moreno's stop was not based on any single factor or mere hunch, but a collective assessment of the scene as he observed it and the information he received when he encountered E.O.E. Moreover, upon encountering E.O.E., Officer Moreno was permitted to ask him, with or without reasonable suspicion, what he was doing and where he was going. *Florida v. Royer*, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229 (1983); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). Appellant's profuse sweating and response indicating that he had just come from the direction of where the fight occurred provided Officer Moreno with an additional reasonable basis for the stop. *See Balentine v. State*, 71 S.W.3d 763, 769 (Tex.Crim.App. 2002). We do note, however, that in isolation, each factor individually would

not be sufficient to establish reasonable suspicion. *See Horton v. State*, 16 S.W.3d 848, 853-54 (Tex.App.--Austin 2000, no pet.)(finding that nervous behavior alone was not enough to establish reasonable suspicion); *Gamble v. State*, 8 S.W.3d 452, 454 (Tex.App.--Houston [1st Dist.] 1999, no pet.)(explaining that walking away from police in a residential neighborhood at night without any other factors giving rise to suspicion was not sufficient to justify a frisk). In sum, Officer Moreno's suspicion that Appellant had engaged in criminal activity was based on far more than a mere "hunch" that Appellant alleges. Accordingly, we overrule Appellant's second issue on appeal.

### *BRADY* VIOLATIONS?

Because Issues Three and Four allege *Brady* violations, we will consider them together.

#### *Standard of Review and Applicable Law*

We review a trial court's ruling on a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App. 2007); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App. 2001). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Archie*, 221 S.W.3d at 699, *citing Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004).

"Generally, a mistrial is only required when the improper evidence is 'clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.'" *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex.Crim.App. 1999), *citing Hernandez v. State*, 805 S.W.2d 409, 414 (Tex.Crim.App. 1990). Otherwise, where the prejudice is curable, an instruction by the court to disregard eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App.

2004); *see also Christ v. State*, 480 S.W.2d 394, 396 (Tex.Crim.App. 1972)(explaining that a court's instruction to disregard a records custodian's testimony was sufficient to remedy any prejudice because the court struck the testimony in its entirety). It is also presumed that a jury follows a trial court's motion to disregard improperly admitted evidence. *Hinojosa*, 4 S.W.3d at 253.

The State has an affirmative duty under the Due Process Clause to disclose exculpatory or impeachment evidence that is material to guilt or punishment. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963); *State v. DeLeon*, 971 S.W.2d 701, 705 (Tex.App.--Amarillo 1998, pet. ref'd); *Harwood v. State*, 961 S.W.2d 531, 544 (Tex.App.--San Antonio 1997, no pet.). A *Brady* violation occurs whenever the state suppresses, either willfully or even inadvertently, evidence favorable to a defendant. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97; *Harm v. State*, 183 S.W.3d 403, 406 (Tex.Crim.App. 2006). There can be no *Brady* violation without the suppression of favorable evidence. *Harm*, 183 S.W.3d at 406. Moreover, the court in *Harvard v. State* held that the *Brady* rule applies to a situation in which exculpatory evidence is known to the State, but unknown to the defendant. 800 S.W.2d 195, 204 (Tex.Crim.App. 1989)(explaining that no *Brady* violation exists if the facts are known or discoverable by the defendant).

*Brady* establishes three requirements that a defendant must meet to establish reversible error: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex.Crim.App. 2011), *citing Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App. 2002).

Where, as here, the evidence is disclosed during trial, the materiality question turns on whether the defendant was prejudiced by the delayed disclosure. *See Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.--Waco 1997, pet. ref'd). Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *See id.; Losoya v. State*, 636 S.W.2d 566, 571 (Tex.App.--San Antonio 1982, no pet.). The failure to request a continuance waives any *Brady* violation, as well as any violation of a discovery order. *Taylor v. State*, 93 S.W.3d 487, 502 (Tex.App.--Texarkana 2002, pet. ref'd); *Lindley v. State*, 635 S.W.2d 541, 544 (Tex.Crim.App. 1982); *Yates*, 941 S.W.2d at 364; *Losoya*, 636 S.W.2d at 571.

*Motion for Mistrial Based on Brady Violations*

In his third issue, E.O.E. contends that the trial court erred in denying his motion for mistrial based on alleged *Brady* violations. Specifically, he asserts that the State intentionally withheld photographs created by Kathy Serrano, the State's DNA expert witness. Because he did not move for a continuance, he has waived his complaint.

In *Wallace v. State,* 458 S.W.2d 67, 70-71 (Tex.Crim.App. 1970), the court held that the defendant could not complain on appeal about the suppression of evidence where he was aware of the material before the jury retired. In a similar case, the Court of Criminal Appeals noted that the defendant made no request for a continuance following the disclosure of allegedly exculpatory evidence during trial. *See Juarez v. State,* 439 S.W.2d 346 (Tex.Crim.App. 1969). Here, E.O.E. properly objected to the photographs and then moved for a mistrial, but he failed to request a continuance. By not requesting a continuance, he made the tactical decision to proceed with the trial, aware of the previously undisclosed evidence. Hence, he cannot now credibly complain that the State's late disclosure essentially placed the "whole case in such a different light as to undermine our confidence in the verdict." We further note that the court struck Serrano's testimony, including the exhibit which contained the photographs, before the

photographs were even admitted into evidence or shown to the jury. The trial court also properly instructed the jury to disregard all of Serrano's testimony. Under such circumstances, even had E.O.E. moved for a continuance, we find no reversible error occurred. We overrule Issue Three.

*Motion for New Trial Based on Prosecutorial Misconduct*

Finally, E.O.E. contends that the trial court erred in denying his motion for new trial based on prosecutorial misconduct. This argument appears to be based upon: (1) the State's failure to investigate Officer Moreno's unrelated 2008 involvement in an on-duty civilian shooting as well as (2) the State's exclusion of Serrano's photographs from her report, as discussed in Issue Three. He insists that such actions by the State constitute *Brady* violations.

A defendant must properly preserve a complaint for prosecutorial misconduct or it is forfeited. *Bautista v. State*, 363 S.W.3d 259, 263 (Tex.App.--San Antonio 2012); TEX.R.APP.P. 33.1(a). To preserve error, a defendant must make a timely and specific objection during trial, request an instruction by the trial court to disregard the matter improperly presented before the jury, and move for mistrial. *Bautista*, 363 S.W.3d at 262-63. Here, E.O.E. properly objected to and preserved both arguments. The arguments raised in Issue Four ultimately allege that the State's acts were "so pronounced and persistent that [they] deprived [E.O.E.] of a fair trial as the jury was influenced by what they heard." We disagree.

We perceive no error. Nothing regarding Officer Moreno's involvement in the 2008 on-duty shooting rises to the level of a *Brady* violation. E.O.E. counters that a *Brady* violation occurred because the 2008 incident constituted exculpatory information regarding impeachment. This incident in no way constitutes evidence that would tend to exculpate this juvenile. In fact, the State complied with the trial court's order and all of E.O.E.'s discovery requests for any law enforcement disciplinary actions related to his particular case. It was ultimately determined that Officer Moreno misstated the classification of the legal status of his 2008 lawsuit during his

initial testimony at trial. Further testimony elicited during the bill of review revealed that there were no criminal charges filed; that Officer Moreno complied with the investigation conducted by the Internal Affairs; no disciplinary actions were imposed on Moreno; and the case was dismissed with prejudice. Accordingly, E.O.E. was not adversely affected in his ability to effectively cross-examine Officer Moreno.

E.O.E. has also failed to show how he was prejudiced by Serrano's photographs. As already discussed in Issue Three, the trial court properly struck all of Serrano's testimony, including the exhibit which contained the photographs, and instructed the jury to disregard. These actions cured any prejudice that may have resulted. Moreover, as we previously noted in Issue Three, even if Appellant could demonstrate a *Brady* violation regarding Serrano's photographs, he waived it by failing to request a continuance. Because the trial court did not err in denying the motion for a new trial, we overrule Issue Four and affirm the judgment of the trial court below.

May 5, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.