

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00004-CR

STEVEN AHN                                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
### TRIAL COURT NO. CR-2016-01031-A

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Steven Ahn of driving while intoxicated, and his punishment was assessed at 180 days' confinement and an $800 fine. *See* Tex. Penal Code Ann. § 49.04(a)–(b) (West Supp. 2017). The trial judge suspended imposition of the jail sentence and placed Ahn on community supervision for sixteen months. *See* Tex. Code Crim. Proc. Ann. art. 42A.053(a) (West Supp.

---

[1]*See* Tex. R. App. P. 47.4.

2017).  In his first issue, Ahn argues that the trial court reversibly erred by overruling his objections to some of the prosecutor's statements during the State's closing argument.  In his second issue, Ahn contends the State failed to disclose the identity of an eyewitness in violation of both *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963), and the Texas Michael Morton Act, Tex. Code Crim. Proc. Ann. art. 39.14 (West Supp. 2017), and consequently, that the trial court erred by failing to grant him a mistrial and by prohibiting him from introducing a newspaper article written by the undisclosed eyewitness.  We find no reversible error, and therefore, we affirm.

## I.  BACKGROUND

At approximately 1:00 a.m. on September 6, 2015, Officer Timothy O'Hare, a patrol officer with the City of Lewisville Police Department, exited northbound Interstate 35 onto the on-ramp of Highway 121 when he saw a light green Lotus Elise stopped on the right shoulder.  Officer O'Hare saw that the driver's side of the vehicle was "riding the shoulder line" and that the driver's door was open into the right lane of travel.  He also saw someone standing beside the front passenger door leaning inside the car.  Thinking there was either a medical emergency or that the car was broken down, Officer O'Hare pulled behind the car and activated his rear emergency lights to alert other drivers of the hazard.  He then went to speak with Ahn, the car's driver.

As Officer O'Hare walked toward the car, Ahn closed the passenger door, walked back to the driver door, got in the driver's seat, and shut the driver door.

2

Officer O'Hare walked up to the driver's side of the car, and he smelled a strong odor of an alcoholic beverage coming from inside it. Ahn's wife was seated in the front passenger seat, and Officer O'Hare saw that she had vomited both inside the car and outside the front passenger window. Officer O'Hare asked Ahn what was happening, and Ahn stated that his wife had had too much to drink and that he was driving her home. Ahn's speech was slurred, and his eyes were bloodshot. Officer O'Hare then conducted an intoxication investigation, which included his administration to Ahn of three standardized field sobriety tests, all of which Ahn failed. Based on all of his observations of Ahn, Officer O'Hare concluded Ahn was intoxicated and arrested him.

## II. JURY ARGUMENT

In his first issue, Ahn argues the trial court erred by overruling his objections that the prosecutor misstated the law and contradicted the jury charge during the State's closing argument, resulting in his being denied the right to a unanimous jury verdict. Ahn specifically points to the following three statements the prosecutor made to the jury:

> [Prosecutor]:  The law does not require you to agree on which element we've met our burden on. . . .
>
>     . . . .
>
>     Under Texas law you don't have to agree on which element we've met our burden on. You just have to believe beyond a reasonable doubt that we've met our burden on either mental or physical faculties.
>
>     . . . .

3

Based on all of the evidence today, we believe that we have met our burden of proving beyond a reasonable doubt that on September 6th of 2015 this Defendant lost the normal use of his mental and physical faculties due to alcohol, and we ask you to find him guilty of driving while intoxicated.

Ahn objected to the first statement on the ground that it violated his constitutional right to a unanimous jury verdict, and he additionally objected to the second statement on the ground that it contradicted the jury charge. The trial court overruled both objections and gave Ahn running objections to both lines of argument.

Although Ahn frames his first issue in terms of his being denied a unanimous jury verdict, he complains only of statements the prosecutor made during the State's closing argument and does not assert any error in the jury charge. Thus, we construe his first issue as asserting a complaint of improper jury argument. *See Walker v. State*, No. 12-12-00379-CR, 2014 WL 4637964, at *15–16 (Tex. App.—Tyler Sept. 17, 2014) (mem. op., not designated for publication), *rev'd on other grounds*, 2016 WL 6092523, at *1 (Tex. Crim. App. Oct. 19, 2016) (not designated for publication).

## A.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on an objection asserting improper jury argument for an abuse of discretion. *Whitney v. State*, 396 S.W.3d 696, 705 (Tex. App.—Fort Worth 2013, pet. ref'd). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation

4

of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Additionally, "[i]t is well recognized that the State and the accused are entitled to give reasonable explanations of the law," but "[a]ny argument that contains a statement of the law contrary to the court's charge is erroneous and is an improper argument." *Grant v. State*, 738 S.W.2d 309, 311 (Tex. App.—Houston [1st. Dist.] 1987, pet. ref'd). When evaluating an alleged improper argument, we view the statement in the context of the entire argument. *Davis v. State*, 268 S.W.3d 683, 694 (Tex. App.—Fort Worth 2008, pet. ref'd).

### B. THE PROSECUTOR'S ARGUMENT DID NOT CONFLICT WITH THE JURY CHARGE'S JURY-UNANIMITY INSTRUCTIONS

We consider first Ahn's contention that the prosecutor's statements were improper because they contradicted the jury charge's instructions requiring jury unanimity as to all elements of the driving-while-intoxicated offense. Ahn quotes the charge as follows:

> Our law provides that a person commits the offense of driving while intoxicated if he operates a motor vehicle in a public place while intoxicated.
>
> . . . .
>
> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must say by your verdict, not guilty.

5

He contends the prosecutor contradicted this portion of the charge by telling the jury that "[t]he law does not require you to agree on which element we've met our burden on."

One portion of the court's charge that Ahn omitted from his quotation of it was its instruction on the term "intoxicated." That instruction stated, "The term 'intoxicated' means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." The prosecutor began her closing argument by telling the jury that she wanted to "go over a little bit of the jury charge that the Judge just read to you." She specifically highlighted the term "intoxicated" in the charge and recited almost verbatim the charge's instruction on that term, telling the jury that "[u]nder Texas law, the term 'intoxicated' means not having the normal use of your mental or physical faculties due to the introduction of alcohol." Having thus focused the jury on the term "intoxicated" in the jury charge, the prosecutor continued:

> [Prosecutor]: The law does not require you to agree on which element we've met our burden on. Three of you can believe beyond a reasonable doubt that this Defendant lost the normal use of his mental faculties due to alcohol; three of you can believe that -- beyond a reasonable doubt that he lost the normal use of his physical faculties --
>
> [Defense Counsel]: Your Honor --
>
> [Prosecutor]: -- due to the introduction of alcohol.
>
> [Defense Counsel]: I'm sorry, Your Honor, but I've got an objection. That is a violation of my client's constitutional right to a unanimous verdict. I want that objection here because I'm going to take that up some day.

6

THE COURT: Okay. I'm going to let you have a running objection to that. I'm going to overrule it, and I'm going to let you have that -- have a running objection to that.

. . . .

[Prosecutor]: Under Texas law you don't have to agree on which element we've met our burden on. You just have to believe beyond a reasonable doubt that we've met our burden on either mental or physical faculties.

[Defense Counsel]: I'm going to object. She's instructing the jury on the law outside of the jury charge at this point, Your Honor.

THE COURT: Okay. And I'll overrule that and let you have a running objection to that one, also.

The above reveals that the prosecutor's statements that the law did not require the jury to agree on which "element" the State had met its burden of proof occurred in the context of her discussion of the charge's definition of the term "intoxicated." And it is clear that the prosecutor's use of the word "element" in that context was a reference to the charge's instruction that a person can be intoxicated by not having the normal use of either his mental or physical faculties due to the ingestion of alcohol, not a reference to the charge's instruction that the prosecution had to prove every element of the offense beyond a reasonable doubt. Thus, in context, the prosecutor's statements did not contradict the jury charge's jury-unanimity instructions, and we therefore conclude the trial court did not abuse its discretion by overruling Ahn's objection that the prosecutor's statements contradicted the charge's jury-unanimity instructions. We overrule this portion of Ahn's first issue.

7

## C. The Prosecutor's Argument Did Not Conflict With the Charge's Instruction on Intoxication

Ahn also contends the prosecutor's argument concerning the term "intoxication" was improper because it conflicted with the charge's instruction on that term. He states that the phrase "mental or physical faculties" is not defined by statute and has not acquired any technical or particular meaning. Thus, by telling the jury that it could convict him if three members of the jury believed he had lost his mental faculties and three believed he had lost his physical faculties, Ahn argues, the prosecutor "contradicted the definition of intoxication as it appeared in the charge and improperly recast the definition of intoxication to include two separate states in which" one could be intoxicated.

As Ahn acknowledges in his brief, the charge's instruction on the term "intoxicated" sets forth almost verbatim the penal code's definition of that term. *See* Tex. Penal Code Ann. § 49.01(2)(A) (West 2011) (defining "intoxicated" as relevant here to mean "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body"). And as noted above, the prosecutor began her argument by reciting nearly verbatim the charge's definition of "intoxicated." That definition provides two different means by which the State may prove a person is intoxicated from alcohol—that is, by his not having the normal use of his mental faculties or of his physical faculties by reason of the introduction of alcohol. *See id.*; *cf. Henderson v. State*, No. 05-14-00025-CR, 2014 WL 6780647, *5–6 (Tex. App.—Dallas Dec. 2, 2014, pet. ref'd)

8

(mem. op., not designated for publication) (holding that submission of mental and physical faculty components of the impairment theory of intoxication in the disjunctive was not erroneous). Thus, the prosecutor did not, as Ahn contends, provide the jury with a definition of the term "intoxicated" that was contrary to the charge's definition. Ahn has not shown that the prosecutor's statements contradict the charge's instruction on the definition of "intoxicated." Therefore, we conclude the trial court did not abuse its discretion by overruling Ahn's objection that the prosecutor's statements contradicted the charge's instruction on the definition of "intoxicated." We overrule this portion of Ahn's first issue.

### D. THE PROSECUTOR'S ARGUMENT DID NOT CONFLICT WITH THE LAW REQUIRING JURY UNANIMITY

Finally, Ahn contends the prosecutor's argument misstated the law by telling the jury it did not need to be unanimous on all the elements of the offense in order to convict him. Of course, jury unanimity is required in all criminal cases in Texas. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *Pollock v. State*, 405 S.W.3d 396, 404 (Tex. App.—Fort Worth 2013, no pet.). That means each and every juror must agree that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745. Thus, to convict, a jury must be unanimous on each essential element of the charged offense. *Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). But while jury unanimity is required on the essential elements of the offense, "when the statute in question establishes different modes or means by which the

9

offense may be committed, unanimity is generally not required on the alternate modes or means of commission." *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006) (quoting *State v. Johnson*, 627 N.W.2d 455, 459 (Wis. 2001)); *see Pollock*, 405 S.W.3d at 404 (noting jury-unanimity requirement does not mean the jury must unanimously agree that the defendant committed an offense in one specific way).

A person commits the offense of driving while intoxicated if he is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). As relevant to the facts of this case, "intoxicated" is defined as either (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2)(A), (B). The first definition is often referred to as the "impairment" theory of intoxication, and the second definition is often referred to as the "per se" theory of intoxication. *See, e.g.*, *Bradford v. State*, 230 S.W.3d 719, 721–22 (Tex. App.—Houston [14th Dist.] 2007, no pet.). These two theories of intoxication "are not distinct offenses, distinct elements of the offense, or even alternative means of committing the offense, but are instead alternative means by which the State may prove intoxication." *Id.* at 722 (emphasis omitted) (citing *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003)). Nor are the separate components of the impairment theory of intoxication—loss of mental or loss of physical faculties—elements of the offense. *Id.* at 723.; *see Henderson v. State*, No. 05-14-00025-CR, 2014 WL

6780647, at *5–6 (Tex. App.—Dallas Dec. 2, 2014, pet. ref'd) (mem. op., not designated for publication); *Farese v. State*, No. 04-12-00574-CR, 2014 WL 667509, at *3 (Tex. App.—San Antonio Feb. 19, 2014, no pet.) (mem. op., not designated for publication); *Zamora v. State*, No. 14-08-01084-CR, 2010 WL 456941, at *2 (Tex. App.—Houston [14th Dist.] Feb. 11, 2010, no pet.) (not designated for publication). Thus, because the mental and physical faculties components of the impairment theory are not elements of the offense, the jury was not required to be unanimous on those components. *See Yost*, 222 S.W.3d at 877 (noting jury unanimity required on the essential elements of an offense); *see also Jefferson*, 189 S.W.3d at 311 (noting unanimity not required on the alternate modes or means of committing an offense). Therefore, we conclude the trial court did not abuse its discretion by overruling Ahn's objection that the prosecutor's statements misstated the law requiring jury unanimity on all elements of the offense. We overrule the remaining portion of Ahn's first issue.

### III. *BRADY* COMPLAINT

In his second issue, Ahn contends the State violated *Brady* and the Texas Michael Morton Act by failing to disclose before trial the identity of a civilian—a newspaper reporter—who witnessed the events surrounding Officer O'Hare's DWI investigation. *See Brady*, 373 U.S. at 87–88; *see also* Tex. Code Crim. Proc. Ann. art. 39.14. And given those violations, Ahn argues, the trial court erred by failing to grant a mistrial and by prohibiting him from introducing into

11

evidence an article the reporter published that contained details of his DWI arrest. We conclude Ahn failed to preserve these complaints.

## A. RELEVANT FACTS

After a jury was selected on the first day of trial (November 29, 2016), the trial court dismissed the jury and asked the parties whether they had anything that needed to be addressed the next morning before the trial court brought the jury back in to proceed with the trial. Ahn's counsel told the trial court that he had only just learned that the State had subpoenaed a witness for trial. Ahn's counsel indicated that although the State had filed the subpoena for the witness before trial, it did not serve Ahn with a copy of the subpoena. Ahn's counsel indicated that he was going to attempt to access the subpoena to try to get a phone number to contact the witness before the trial resumed the next morning and that the witness potentially presented a "Michael Morton scenario" because Ahn's counsel was not sure whether the witness had any exculpatory evidence. The trial court looked through its record and found a subpoena filed for Heather Marie Smith. The subpoena did not provide a phone number for Smith but did provide her work address, which the trial court provided to Ahn's counsel. Ahn's counsel did not request a continuance or otherwise object at this point, and the trial court recessed until the following morning.

The next morning, the trial court asked the parties whether they had anything to address, and Ahn's counsel stated he had "[n]othing other than [that he] want[ed] to thank [the prosecutor]" because she had "provided the number to

12

the [subpoenaed] witness for us this morning." Ahn's counsel further stated that the reason the prosecutor did not provide it the night before was that the prosecutor did not have the witness's phone number. Ahn's counsel also stated that he appreciated the prosecutor's providing the witness's phone number. But he again did not request a continuance or otherwise object at this point, and the trial proceeded. Indeed, during opening statements, Ahn's counsel told the jury that Officer O'Hare had a civilian in his vehicle during his DWI investigation.[2] After opening statements were concluded, the State called its first witness: Officer O'Hare.

As relevant to Ahn's second issue, Officer O'Hare testified that for the night shift during which he had arrested Ahn for driving while intoxicated, Goodwin, a local news reporter, had been placed with him for a "ride along."[3] Ahn's counsel did not request a continuance or object at this point, and the State then finished its direct examination of Officer O'Hare, after which the trial court took a lunch break. After the break and before the jury returned, Ahn's counsel raised an objection concerning Officer O'Hare's testimony that Goodwin was riding along

---

[2]The record indicates Smith was the civilian to whom Ahn's counsel was referring, and the record further shows that Smith's last name had at some point changed to Goodwin. We will refer to this individual by her current last name, Goodwin.

[3]Officer O'Hare testified that these civilian ride-alongs occurred occasionally and that in this instance, Goodwin had made a request to the department for a ride-along, and the department placed her with him for the night. Officer O'Hare also testified that Goodwin had previously ridden along with multiple officers, including him.

with him during his shift. Ahn's counsel stated he had only just learned that Goodwin was a reporter, that she had published an article about Officer O'Hare's DWI investigation and subsequent arrest of Ahn incident, and that the article included a photograph. Ahn's counsel further stated that although the State had subpoenaed Goodwin before trial, it had not served the subpoena on him, suggesting that he was consequently unaware whether she may have information, including additional photographs, related to the case.

Ahn's counsel then objected that this was a violation of the Texas Michael Morton Act. When the trial court asked Ahn's counsel, "[W]hat do you want me to do about it?" Ahn's counsel replied, "Hold them responsible and dismiss this case." The trial court stated it was not going to dismiss the case, but it stated it would exclude Goodwin from testifying. Ahn's counsel then asked the trial court whether it would allow him to introduce Goodwin's article as an exhibit so he could impeach Officer O'Hare with it, and the trial court replied that if Ahn's counsel introduced the article, then it would allow the State call Goodwin as a witness. Ahn's counsel asked whether he could cross-examine Officer O'Hare before deciding whether to introduce the article, and the trial court allowed him to do so.

Ahn's counsel then cross-examined Officer O'Hare. The State called another witness, and Ahn's counsel cross-examined him. The trial court took another break, and outside the presence of the jury, it asked, "Where are we on the newspaper person now from both sides?" Ahn's counsel stated, "We're not

14

touching her," agreeing she could be released, and the State indicated it was going to rest. The State rested, and Ahn rested without presenting any evidence. Both sides then closed.

## B. PRESERVATION

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

With respect to Ahn's contention that the trial court erred by failing to grant a mistrial to remedy the State's alleged violations of *Brady* and the Michael Morton Act, the record shows that Ahn never asked the trial court for a mistrial. As demonstrated above, the record instead shows that Ahn only requested that the trial court dismiss the case. In addition, although on appeal Ahn contends the State's failure to disclose Goodwin's identity violated *Brady* as well as the Texas Michael Morton Act, he objected at trial only on the basis of the Texas

15

Michael Morton Act; he did not raise a *Brady* objection. Thus, Ahn failed to preserve his complaint that the trial court erred by failing to grant a mistrial not only because he did not request a mistrial and obtain an adverse ruling from the trial court as to a mistrial, but also because his complaint on appeal fails to comport with his objection at trial.[4]  *See* Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (noting that to preserve error, the record must show that (1) the party made a timely request stating the grounds for the desired ruling and (2) the trial court expressly or implicitly ruled on the request or refused to rule on the request and the complaining party objected to the refusal); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").  We therefore overrule this part of Ahn's second issue.

---

[4]Additionally, to preserve a *Brady* complaint when *Brady* evidence is disclosed at trial, a defendant generally must request a continuance. *See, e.g.*, *In re E.O.E.*, 508 S.W.3d 613, 619, 625 (Tex. App.—El Paso 2016, no pet.) (holding defendant waived *Brady* complaint by failing to request continuance after alleged *Brady* evidence was disclosed during trial); *Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003) ("When evidence withheld in violation of *Brady* is disclosed at trial, the defendant's failure to request a continuance waives the error or at least indicates that the delay in receiving the evidence was not truly prejudicial."), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005). Thus, even assuming the evidence that Ahn complains of constituted *Brady* evidence and that it did not come to light until trial, Ahn nevertheless failed to preserve his *Brady* complaint for the additional reason that he did not request a continuance.

16

Ahn also argues the trial court erred by not allowing him to introduce Goodwin's article into evidence. The record shows that although Ahn discussed with the trial court whether he could admit Goodwin's article, he never actually requested the article be admitted into evidence, and the trial court never made a ruling excluding it. Indeed, the record demonstrates that the trial court indicated it would allow Ahn to introduce the article; however, the trial court noted that if he did, it would allow the State to call Goodwin as a witness. Because Ahn did not request that the article be admitted and the trial court did not make a ruling excluding it, Ahn has failed to preserve his complaint that the trial court erred by excluding the article. *See* Tex. R. App. P. 33.1(a); *Pena*, 353 S.W.3d at 807. We overrule the remainder of Ahn's second issue.

## IV. CONCLUSION

Having overruled all of Ahn's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 7, 2017

17